Armando **HERNANDEZ, Jr.**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 14–04–00055–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

June 21, 2005.

Rehearing Overruled Sept. 1, 2005.

Kent A. Schaffer, Houston, TX, for appellant.

Carmen Castillo Mitchell, Houston, TX, for appellee.

Panel consists of Chief Justice HEDGES and Justices FOWLER and FROST.

## OPINION

WANDA McKEE FOWLER, Justice.

Appellant, Armando Hernandez, Jr., was convicted by a jury of capital murder and sentenced to life in the Texas Department of Criminal Justice, Institutional Division. Maintaining that he did not intend to kill the complainant, that he intended only to rob him, appellant challenges his conviction on seven grounds: (1) the trial court erred in not charging the jury on the lesser-included offense of theft; (2) the evidence was legally insufficient to prove that appellant was guilty of being a party to capital murder; (3) the trial court erred in excluding a statement appellant made that he claims is material to his defense; (4) the trial court erred in overruling appellant's objection to allegedly improper jury argument; (5) the trial court's instruction allowing a finding of guilt based on conspiracy, which was not alleged in the indictment, denied appellant due process; (6) and (7) the trial court erred in allowing the State to offer extraneous offense evidence of appellant's drug transactions, which he claims violated Texas Rules of Evidence 404(b) and 403. We affirm.

Because several of appellant's issues require us to review the evidence presented at trial, we will move directly to appellant's issues without presenting a statement of facts.

## I. No Charge on the Lesser-included Offense of Theft

■ In his first issue, appellant contends the trial court erred in not charging the jury on the lesser-included offense of theft. Appellant argues he was entitled to this charge because he testified that he went to the complainant's house only to rob him, and did not plan for, anticipate, or participate in, his killing, and all he did was remove what he intended to steal. On these facts, however, we disagree that appellant was entitled to this charge.

■ We apply the following two-prong test to determine if a defendant is entitled to a charge on a lesser-included offense: (1) the lesser-included offense must be included within the proof necessary to establish the offense charged; and (2) some evidence must exist in the record that would permit a jury rationally to find that if the defendant is guilty, he is guilty only of the lesser-included offense. *Wesbrook v. State*, 29 S.W.3d 103, 113 (Tex. Crim.App.2000) (en banc); *Rousseau v. State*, 855 S.W.2d 666, 672–73 (Tex.Crim. App.1993) (en banc). We review all the evidence presented at trial in making this determination. *Rousseau*, 855 S.W.2d at 673.

A person commits capital murder if he intentionally commits murder in the course

of committing or attempting to commit robbery. *See* Tex. Penal Code § 19.03(a)(2). Appellant was charged with unlawfully, while in the course of committing and attempting to commit the robbery of Christopher Harrell, intentionally causing the death of Christopher Harrell by shooting him with a deadly weapon, namely, a firearm, on January 29, 2003. The court's charge authorized the jury to convict appellant as a party to the offense under Penal Code sections 7.02(a) and 7.02(b). In addition to capital murder, the jury was charged on the lesser-included offenses of aggravated robbery and robbery.

The State concedes that theft may be a lesser-included offense of capital murder in this case. Therefore, assuming *arguendo* that the first prong of the test is met, we turn to the second prong. To be entitled to a jury instruction on the lesser-included offense of theft, the record must contain evidence proving appellant committed a theft of the complainant's property, but did not injure or threaten him in any way and did not make him fearful of imminent physical injury. *See* Tex. Penal Code § 31.03(a); *Holiday v. State*, 14 S.W.3d 784, 788 (Tex.App.-Houston [1st Dist.] 2000, pet. ref'd). The credibility of the evidence and whether it conflicts with other evidence must not be considered in deciding whether the charge on the lesser-included offense should be given. *Saunders v. State*, 840 S.W.2d 390, 391 (Tex. Crim.App.1992) (en banc). Regardless of the strength or weakness of the evidence, if evidence from any source raises the issue that the defendant is guilty only of the lesser-included offense, then the charge must be given. *Id.* The following evidence from trial shows that appellant cannot meet this standard because his plan to rob Harrell involved placing Harrell in fear of imminent bodily injury.

At trial, appellant testified that he had been laid off from his job and was behind on his bills, so he decided to rob Christopher Harrell of his guns. Appellant had sold drugs to Harrell for several years and knew he owned at least one handgun and an assault rifle. He initially asked Ramon Villareal to help him rob Harrell, but when Villareal refused, appellant asked Juan Pena to go with him. Appellant told Michael Salazar about his plan to rob Harrell and asked Salazar if he would drive him to Harrell's house. Appellant told Salazar that his plan was to wrestle Harrell down and tie him up with duct tape. According to appellant, neither he nor Pena brought a weapon to Harrell's house.

Appellant testified that, on January 29, 2003, Harrell had called him and asked for some drugs. Appellant called Harrell to tell him he was on the way to his house to bring him the drugs. Salazar drove appellant and Pena. When they arrived, Harrell, appellant, and Pena went inside; Salazar waited outside. In the house, appellant saw Harrell and Pena smoking crack cocaine, and he asked to use the restroom. According to appellant, his plan included having Harrell and Pena get high, and then "we were going to catch him off guard and wrestle him up and tape him up." When appellant came out of the restroom, he saw Harrell showing Pena a gun. As appellant watched, Pena shot Harrell twice. Appellant denied that he planned or intended the shooting. After Pena shot Harrell, appellant collected Harrell's guns and other items, and he, Pena, and Salazar left. At some point as they drove, Pena handed appellant a handgun, and, while they were crossing a bridge, appellant threw it out the car window into the river below. The handgun was never recovered.

Thus, by appellant's own account, he planned the robbery and he knew the crime would involve confronting, subduing,

and robbing Harrell. His plan included getting Harrell high, wrestling him down, and binding him with duct tape. Appellant's intended actions, therefore, encompassed more than just theft. At best, his testimony entitled him to a charge on the lesser-included offense of robbery—a charge he received. *See* TEX. PEN.CODE § 29.02(a).[1] Moreover, the charge instructed the jury on the law of parties, and it is uncontroverted that either appellant or Pena used a deadly weapon during the robbery. On these facts, no evidence exists that appellant, if guilty, is guilty only of theft. *See Hanson v. State*, 55 S.W.3d 681, 698–99 (Tex.App.-Austin 2001, pet. ref'd) (holding that appellant convicted of capital murder, who gave statement that he did not want to participate in robbery of victim, did not actually hit or cut victim, and only committed post-homicide theft, was not entitled to jury charge on lesser-included offense of theft); *cf. Bignall v. State*, 887 S.W.2d 21, 23–24 (Tex.Crim. App.1994) (en banc) (appellant convicted of aggravated robbery was entitled to theft instruction when some evidence existed that no deadly weapon was used or exhibited during alleged robbery). We overrule appellant's first issue.

## II. Legal Sufficiency of the Evidence

In his second issue, appellant contends the evidence is legally insufficient to prove beyond a reasonable doubt that appellant was guilty of being a party to capital murder.[2]

### A. Applicable Law

The jury was authorized to find appellant guilty of capital murder either as a principal to capital murder, or as a party under Texas Penal Code sections 7.02(a)(2) or 7.02(b). Under the law of parties, a person may be convicted as a party to an offense if the offense is committed by his own conduct or by the conduct of another for which he is criminally responsible. TEX. PENAL CODE § 7.01(a). Section 7.02(a)(2) provides that a person is criminally responsible for an offense committed by the conduct of another if, acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense. TEX. PENAL CODE § 7.02(a)(2). Section 7.02(b) provides that if, in the attempt to carry out a conspiracy to commit one felony, another felony is committed by one of the conspirators, all conspirators are guilty of the felony actually committed, though having no intent to commit it, if the offense was committed in furtherance of the unlawful purpose and was one that should have been anticipated as a result of carrying out the conspiracy. TEX. PENAL CODE § 7.02(b).

When, as here, a jury returns a general verdict and the evidence is sufficient to support a guilty finding under any of the allegations submitted, the verdict will be upheld. *See Rabbani v. State*, 847 S.W.2d 555, 558 (Tex.Crim.App.1992) (en banc). Evidence is sufficient to convict under the law of parties when the defendant is physically present at the commission of the offense and encourages its commission by words or other agreement. *Ransom v. State*, 920 S.W.2d 288, 302

---

1. A person commits the offense of robbery if, in the course of committing theft and with the intent to obtain or maintain control of property, he: (1) intentionally, knowingly, or recklessly causes bodily injury to another; or (2) intentionally or knowingly threatens or places another in fear of imminent bodily injury or death. TEX. PEN.CODE § 29.02(a).

2. We apply the standard of review applicable to appellant's legal insufficiency claim. *See Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

(Tex.Crim.App.1996) (op. on reh'g). In determining whether a defendant participated as a party in the commission of an offense, the fact finder may look to events that occurred before, during, or after the offense, and may place reliance on acts showing an understanding and common design. *Ransom v. State,* 920 S.W.2d 288, 302 (Tex.Crim.App.1996) (op. on reh'g). *Id.* Further, circumstantial evidence may be used to prove party status. *Id.*

## B. Application of Law to Facts

Appellant contends the evidence is legally insufficient to convict him as either a primary actor or as a party who was acting with intent to promote or assist the commission of an intentional murder, because the evidence shows that Juan Pena, not he, was the shooter, and appellant did not intend to commit anything more than a robbery. So, he contends the only basis upon which the jury could have convicted him was as a party under Texas Penal Code section 7.02(b). Assuming the correctness of this premise, appellant contends guilt cannot be proven under section 7.02(b) because the evidence is legally insufficient to prove that murder was an offense he should have anticipated as a result of carrying out the robbery. We disagree with appellant's characterization of the evidence and his conclusions.

### 1. *Evidence of Guilt as a Principal*

■ First, the evidence is legally sufficient to permit a rational jury to determine that appellant was guilty of capital murder as a principal. Viewing the evidence in the light most favorable to the jury's verdict, it showed that appellant had been selling illegal drugs to Harrell and knew that Harrell owned various guns and other valuables. Appellant formulated a plan to rob Harrell, and tried to recruit Ramon Villareal to help him. Villareal testified that appellant told him that, because appellant knew Harrell, appellant would have to kill him.[3]

On January 29, 2003, after recruiting Michael Salazar to drive and Juan Pena to accompany him, appellant went to Harrell's house ostensibly to sell Harrell some crack cocaine. Harrell was then shot and killed in his living room. The evidence showed one bullet missed Harrell, but he then was shot in his face as he stood in his living room, and was shot in his temple after he fell to the floor.

After Harrell was shot, appellant and Pena took Harrell's guns and also took ammunition, fishing equipment, and other items from Harrell's house. Appellant and Pena carried the property to the car and told Salazar to drive to Anthony Tunal's house, where they would store the stolen property temporarily. On the way, appellant rolled down the car window and threw a handgun out of the window as they passed over the river. Salazar testified that he asked appellant what he was doing and what had happened, and appellant responded, "I shot him." Salazar asked, "Is he dead?" Appellant said, "I think so."

That night, appellant and Pena burned clothing at Petra Cortina's house. Appellant asked Cortina to help him find a buyer for the stolen weapons, and appellant eventually sold the weapons for money and drugs. He gave a portion of the drugs to Pena and Cortina.[4]

---

**3.** Although appellant denied making the statement and defense counsel strenuously cross-examined Villareal regarding whether appellant, in fact, said this, the jury was entitled to determine Villareal's credibility. *See Cham-*

*bers v. State,* 805 S.W.2d 459, 461 (Tex.Crim. App.1991) (en banc).

**4.** Cortina also testified that, before the incident, appellant told her he was having "money problems" and to get some he "had a lick,"

Viewing the evidence in the light most favorable to the jury's verdict, a rational jury could find beyond a reasonable doubt that appellant shot and killed Harrell during the course of committing the robbery, and that he was therefore guilty of capital murder as a principal.

2. *Evidence of Guilt under Section 7.02(b)*

█ In addition to finding legally sufficient evidence of guilt as a principal, we also find the evidence is legally sufficient to support a finding of guilt as a party under Texas Penal Code section 7.02(b). By appellant's own admission, he and Pena planned the robbery. Thus, the only question is whether appellant should have anticipated Harrell's shooting during the course of the aggravated robbery.

Relying on several factors, appellant contends the record contains no evidence to support a rational inference that he should have anticipated this outcome. First, he points out that Salazar testified that he did not see any guns on appellant or Pena; this corroborated appellant's claim that neither he nor Pena possessed any firearms when they went to Harrell's house.[5] Next, he suggests the physical evidence corroborates his testimony that Harrell was killed with his own gun while showing it to Pena. Finally, although evidence showed that Pena was prone to violence, no evidence established that appellant knew Pena had a propensity to commit murder. For the reasons set out below, these arguments are not convincing.

Although no direct evidence shows that appellant or Pena was armed when they went to Harrell's house, appellant, by his own admission, planned to confront Harrell, subdue him, and take his guns. In spite of denying that he knew about Pena's reputation and testifying that he only recruited him on the recommendation of Villareal, on cross-examination, appellant admitted that he knew Pena from the neighborhood, and he admitted that he knew that Pena had a history of carrying knives and had served time in the penitentiary. Appellant also testified that part of the plan to subdue Harrell was to have Pena and Harrell smoke crack cocaine before wrestling Harrell down and tying him up. On these facts, the jury was entitled to find that appellant should have anticipated that one of the many parts of his plan—whether it be smoking crack cocaine, subduing Harrell, or stealing Harrell's guns—could result in Harrell being shot with one of his guns. *See Moore v. State*, 24 S.W.3d 444, 446–47 (Tex.App.-Texarkana 2000, pet. ref'd) (stating that individual planning to rob a residence should anticipate that a confrontation might occur and that coconspirator, if not already armed, might arm himself with items or weapons found in the residence).

We overrule appellant's second issue.

### III. Excluding Appellant's Statement

In his third issue, appellant contends the trial court reversibly erred when it excluded his statement that he only intended to commit a robbery. During the cross-examination of one of the State's witnesses, Petra Cortina, appellant attempted to elicit testimony that appellant told her he only intended to rob Harrell, and that Juan Pena killed him. The trial court sustained the State's objection to the statement as hearsay.

On appeal, appellant contends the statement was admissible as a statement

which she understood to mean he intended to kill someone for something.

5. Salazar also testified he did not see either appellant or Pena with duct tape.

against interest and to show his state of mind to counter the State's position that he was a party to capital murder. Appellant also argues that the exclusion of the evidence violated his constitutional right to due process because it prevented him from presenting a defense. As we explain below, we conclude that the statement was not admissible as a statement against interest or to show appellant's state of mind, and we conclude that appellant failed to preserve his complaint of alleged constitutional error.

## A. Statement Against Interest

A statement against interest is one "which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability ... that a reasonable person in declarant's position would not have made the statement unless believing it to be true." *See* TEX.R. EVID. 803(24). To be admissible, a statement tending to expose the declarant to criminal liability must be corroborated by circumstances clearly indicating its trustworthiness. *Id.* We review a trial court's decision to admit or exclude evidence of a statement against penal interest for abuse of discretion. *Cunningham v. State*, 877 S.W.2d 310, 313 (Tex.Crim.App.1994) (en banc).

Rule 803(24) does not apply to the appellant's statement to Cortina, because the statement was not contrary to his interest, in fact it absolved him of criminal liability. Any inculpatory significance of the statement—i.e., admitting involvement in a robbery—is minor in comparison to the self-serving nature of appellant's statement that he did not plan or anticipate the shooting. *See Wood v. State*, 18 S.W.3d 642, 651 (Tex.Crim.App.2000) (holding that statements that tend more to exonerate

than to inculpate appellant of criminal liability were not statements against interest); *see also Davis v. State*, 970 S.W.2d 758, 760–61 (Tex.App.-Austin 1998, pet. ref'd) (holding statement of appellant convicted of robbery, in which he confessed only to theft and made other self-serving statements, was not admissible as a statement against penal interest). The statement, if believed, would have entitled him to an acquittal on the capital murder charges and a finding of guilty on a lesser-included offense. Thus, it falls outside the statement-against-interest exception. *See Wood*, 18 S.W.3d at 651.

## B. State of Mind

Nor do we find that appellant's statement was intended to show his then-existing state of mind. Rule 803(3) creates an exception to the hearsay rule for a "statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, or bodily health), but not including a statement of memory or belief to prove the fact remembered or believed...." *See* TEX.R. EVID. 803(3). When appellant spoke to Cortina, he described the events of the robbery and murder and told her that he never intended to shoot Harrell. This evidence describing the events is specifically excluded from the state of mind exception. TEX.R. EVID. 803(3); *see also Glover v. State*, 102 S.W.3d 754, 762–63 (Tex.App.-Texarkana 2002, pet. ref'd). And case law has held that, to the extent the hearsay statement implicates the declarant's intent, plan, or motive, the statement must relate to future, not past, conduct. *See id.* (citing *Jones v. State*, 515 S.W.2d 126, 129 (Tex. Crim.App.1974)). Thus, both the descriptive evidence and the evidence of past intent were inadmissible.[6]

---

6. Appellant argues that *Mullins v. State* supports his position, but that case is distinguish-

## C. Due Process

■ Finally, appellant contends that excluding the statement deprived him of his constitutional right to due process. However, having failed to object at trial on this ground, appellant did not preserve the complaint for appellate review. *See* TEX. R.APP. P. 33.1(a); *Broxton v. State,* 909 S.W.2d 912, 918 (Tex.Crim.App.1995) (en banc) (holding appellant failed to preserve complaint he was denied right to present a defense and right to due process or course of law in violation of the United States Constitution and the Texas Constitution when he did not raise those objections below). We overrule appellant's third issue.

## IV. Improper Jury Argument

■ In his fourth issue, appellant contends the trial court erred in overruling his objection to this portion of the State's rebuttal closing argument:

> See, he told you, it's all Pena's fault because Pena is crazy; I had no idea he was going to kill [Harrell]. You know what? It's a brilliant defense, and it's very convenient because he knows I can't make Juan Pena take that stand and testify. He knows I can't put Juan Pena up there and force him to—
>
> * * *
>
> He knows I can't make Pena take the stand and incriminate himself in a capital murder. He can say anything about Juan Pena he wants to because he knows that I can't refute it.

Appellant contends this argument improperly injected facts outside the record, and "it was an attempt to use the exercise of a constitutional right to the detriment of the Appellant." The State responds that the comments were a direct response to appellant's closing arguments and thus constituted proper jury argument. Although it presents a close issue, upon examination of the record, we agree with the State.

■ Proper jury argument must fall within one of four areas: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) answer to opposing counsel's arguments; or (4) a plea for law enforcement. *Wesbrook,* 29 S.W.3d at 115. The prosecution may argue outside the record in responding to the defense having done so, but may not stray beyond the scope of the invitation. *Wilson v. State,* 938 S.W.2d 57, 60–61 (Tex. Crim.App.1996) (en banc), *abrogated on other grounds, Motilla v. State,* 78 S.W.3d 352 (Tex.Crim.App.2002). Even when an argument exceeds the permissible bounds of these areas, the error is not reversible unless, in light of the record as a whole, the argument is extreme or manifestly improper, violative of a mandatory statute, or injects new facts harmful to the defendant into the trial proceeding. *Wesbrook,* 29 S.W.3d at 115. The prosecutor's remarks must have been a willful and calculated effort to deprive the defendant of a fair and impartial trial. *Id.*

Throughout the trial, appellant maintained that Pena, not he, shot Harrell, and

---

able. *See* 767 S.W.2d 166 (Tex.App.-Houston [1st Dist.] 1988, no writ), *abrogated on other grounds, Brunswick v. State,* 931 S.W.2d 9 (Tex.App.-Houston [1st Dist.] 1996, no writ). In *Mullins,* an aggravated assault case, the investigating officer was prohibited from telling the jury that, when appellant was arrested immediately after the assault, he said that at the time of the incident he was afraid of the

complainant. *Id.* at 170. The appellate court held the statement was relevant and admissible because it showed appellant's state of mind at the time he committed the offense. *Id. Mullins* is not on point because it involved neither descriptive historical information nor information related to intent, plan or motive; instead, it involved an emotion or mental state. *Id.*

that he did not know Pena was violent and unpredictable. Defense counsel also had Pena brought to the courtroom for identification. And, during appellant's closing argument, he stated the following:

> [Appellant] has told you what happened. They went over there without guns. Michael Salazar told you they went over there without guns. They went over there with no intent to cause anybody's death. And there is not one bit of evidence from this stand that my client knew beforehand the total psychopathic nature—

The State objected that counsel was arguing outside the record because there was no evidence in the record as to the mental condition or state of mind of Juan Pena, and the trial court ordered defense counsel to stay within the record. Defense counsel then continued:

> You heard each of their witnesses describe to you Juan Pena, whether it was on direct or cross-examination. You saw him come in the court. You can draw your own mental image of what kind of person he was and you heard what those witnesses thought of him and how they feared him.
>
> Now, the question is: Did my client know the same things that they knew so he could have anticipated that [Pena] was going to do something crazy?

At the conclusion of appellant's closing argument, the State made its rebuttal closing argument, in which it made the statements about which appellant complains.

We find that the State's argument was in response to opposing counsel's argument. Appellant did not expressly question why the State did not present Pena as a witness to rebut his defense, but he did

so implicitly by making Pena's complicity the cornerstone of his defense: Pena was the principal actor, Pena was violent and unpredictable, and because appellant did not know of Pena's violent propensities, he could not have anticipated that Pena would shoot Harrell in the course of the robbery. Additionally, because defense counsel presented Pena to the jury, the jury knew that either side could have called him as a witness, but did not. The jury reasonably could question why the State did not call Pena as a witness. As a result, we cannot conclude the State's response to this question was improper.

 Appellant's other claim on appeal—that he was penalized by the prosecutor's argument that Pena might invoke his constitutional right not to testify—was not made in the trial court. He objected only that the statements were improper jury argument.[7] That objection did not alert the trial judge that appellant objected to the statements because he believed the State used Pena's constitutional right not to testify as a way of penalizing appellant. Not having made the argument in the trial court, appellant has waived it. *See* Tex.R.App. P. 33.1(a); *Turner v. State,* 87 S.W.3d 111, 117 (Tex.Crim.App.2002), *cert. denied,* 538 U.S. 965, 123 S.Ct. 1760, 155 L.Ed.2d 519 (2003) (holding appellant failed to preserve error concerning prosecutor's closing argument when appellate complaint did not comport with objection made at trial); *see also Edwards v. State,* 97 S.W.3d 279, 287 (Tex.App.-Houston [14th Dist.] 2003, pet. ref'd) (holding appellant failed to preserve complaint on appeal that prosecutor improperly asserted appellant was confusing or misleading the jury, when appellant's objection at trial was that

---

7. The State argued that appellant's objection was too general to preserve any error concerning the prosecutor's argument. However, in the context of this record, we find that the objection made was sufficient to inform the trial judge and the prosecutor that appellant objected to the prosecutor allegedly introducing matters outside the record.

prosecutor's argument placed the burden of proof on the defense).

We overrule appellant's fourth issue.

## V. Instruction on Finding of Guilt under Law of Conspiracy

In his fifth issue, appellant contends that the trial court erred in instructing the jury on the law of conspiracy, when the indictment did not allege a conspiracy. Appellant contends that, as a consequence, he was found guilty of an offense not charged in the indictment and for which he was not placed on notice, in violation of his rights to due process under the Fifth and Fourteenth Amendments to the United States Constitution. We find his argument without merit.

The charge authorized the jury to convict appellant under three theories of capital murder: (1) as a principal, (2) as a party under section 7.02(a)(2) of the Texas Penal Code, or (3) as a conspirator under the law of parties as contained in Penal Code section 7.02(b). TEX. PEN.CODE § 7.02(a)(2), (b). The Court of Criminal Appeals repeatedly has rejected similar claims that a charge on the law of parties constitutes an impermissible amendment to an indictment. In *Marable v. State,* the court reiterated that "it is well-settled that the law of parties need not be pled in the indictment." 85 S.W.3d 287, 287 (Tex. Crim.App.2002) (en banc) (citing cases). This rule applies to the law of parties found in both section 7.02(a)(2) and section 7.02(b). *Montoya v. State,* 810 S.W.2d 160, 165 (Tex.Crim.App.1989) (en banc) ("Our examination of case law shows that the theory of criminal responsibility set forth in Section 7.02(b) has often been applied in capital murder cases."); *see also Ammons v. State,* 782 S.W.2d 539, 540–41 (Tex.App.-Houston [14th Dist.] 1989, no

pet.). We are bound to follow this precedent.

We overrule appellant's fifth issue.

## VI. Extraneous Offense Evidence (Issues 6 and 7)

In his sixth and seventh issues, appellant contends that testimony regarding his extraneous drug transactions with Harrell violated Rules of Evidence 404(b) and 403. We will reverse a trial court's decision to admit evidence of an extraneous offense only upon a showing of a clear abuse of discretion. *See Santellan v. State,* 939 S.W.2d 155, 169 (Tex.Crim.App. 1997) (en banc).

Before Ramon Villareal testified, appellant objected to any testimony regarding appellant's prior drug activity generally, and, more specifically, to testimony that Villareal accompanied appellant to deliver drugs to Harrell at his home on a separate occasion before the shooting. The trial court sustained the objection to his drug activity in general and overruled the objection to delivery of drugs specifically to Harrell. The trial court again overruled defense counsel's objections to Villareal's testimony when the State presented it to the jury. During questioning by the State, Villareal testified that, in January, he went with appellant to Harrell's house because appellant had asked Villareal to go with him to deliver crack cocaine. Villareal also testified that, after appellant delivered the cocaine to Harrell, he got back in the car with Villareal and told Villareal that he wanted to rob Harrell of his guns, and asked Villareal to come with him to rob Harrell. At the start of appellant's case, defense counsel, citing Villareal's testimony, objected to the State delving further into appellant's history of past drug transactions with Harrell. The trial court implicitly overruled his objection, offering instead to give the jury a limiting

instruction, if requested, when the evidence was offered.[8] Appellant then testified on direct examination that he regularly sold drugs to Harrell over the course of their six-year relationship before the shooting. The State also cross-examined appellant on some of the details of his drug-related activities generally and as it related to his relationship with Harrell. We thus examine whether the trial court erred in admitting this testimony over appellant's objections.

In prosecutions for murder, article 38.36 of the Texas Code of Criminal Procedure provides in relevant part:

> In all prosecutions for murder, the state or the defendant shall be permitted to offer testimony as to all relevant facts and circumstances surrounding the killing and the previous relationship existing between the accused and the deceased, together with all relevant facts and circumstances going to show the condition of the mind of the accused at the time of the offense.

TEX.CODE CRIM. PROC. art. 38.36(a). In *Smith v. State*, the Court of Criminal Appeals held that evidence admissible under Article 38.36 still must meet the requirements of Rules 403 and 404(b). 5 S.W.3d 673, 679 (Tex.Crim.App.1999).

 Evidence of an extraneous offense may be admitted if it has relevance apart from its tendency to prove the character of a person in order to show that he acted in conformity therewith. *See* TEX.R. EVID. 404(b). Evidence has relevance apart from character conformity when it tends to establish some elemental fact, such as proof of motive, intent, plan, or absence of mistake or accident. *Id.; see also Montgomery v. State*, 810 S.W.2d 372, 387–88 (Tex.Crim.App.1990) (en banc) (op. on reh'g); *Aitch v. State*, 879 S.W.2d 167, 174 (Tex.App.-Houston [14th Dist.] 1994, pet. ref'd). And although relevant, evidence may be excluded under Rule 403 if its probative value is substantially outweighed by the danger of unfair prejudice. *See* TEX.R. EVID. 403. This analysis is to be conducted by the trial judge in light of the unique facts and circumstances of each case, and will not be disturbed on appeal unless it is outside the zone of reasonable disagreement. *See Montgomery*, 810 S.W.2d at 391. In determining whether a trial court has abused its discretion in admitting evidence, we measure the trial court's ruling against the relevant criteria by which a Rule 403 decision is to be made. *See id.* at 392.[9]

Appellant contends admitting the evidence of appellant's extraneous drug transactions with Harrell was error under Rule 404(b) because it was not relevant and was improperly offered to show appellant was generally a criminal and drug dealer. He also complains it was overly

---

8. The trial court indicated that it would not limit the State and allow the jury to think that "these people had known each other for a couple of months on a couple of occasions when in fact they have known each other for years."

9. We consider the following factors: (1) how compellingly the extraneous offense evidence serves to make a fact of consequence more or less probable—a factor which is related to the strength of the evidence presented by the proponent to show the defendant, in fact, committed the extraneous offense; (2) the potential the extraneous offense evidence has to impress the jury in some irrational but nevertheless indelible way; (3) the time the proponent will need to develop the evidence, during which the jury will be distracted from consideration of the indicted offense; and (4) the force of the proponent's need for this evidence to prove a fact of consequence, i.e., whether the proponent has other probative evidence available to him to help establish this fact, and whether this fact related to an issue in dispute. *See Manning v. State*, 114 S.W.3d 922, 926 (Tex.Crim.App.2003).

prejudicial in violation of Rule 403. However, appellant's intent was a material issue at trial, and his defense was that Pena, not he, shot and killed Harrell, and he did not anticipate or intend for the shooting to occur. The evidence of appellant's prior drug transactions was needed to establish the basis for his relationship with Harrell and his familiarity with Harrell's routine, his residence, and his possessions, to reveal the basis for appellant's plan to rob Harrell. It also was relevant to whether appellant intended to kill Harrell because Harrell knew and could identify him.

Before this evidence was admitted, Salazar testified that, when they arrived at Harrell's house, Harrell shook hands with appellant and welcomed appellant into his home. Moreover, the medical examiner testified that toxicology test results showed that Harrell had used cocaine within an hour of his death, making the evidence relevant to the circumstances surrounding Harrell's cocaine use, which, by appellant's own admission, was part of his plan to rob Harrell. As such, it was admissible under Rule 404(b) because it was being used for purposes other than to establish mere character conformity. *See Saxer v. State*, 115 S.W.3d 765, 775 (Tex. App.-Beaumont 2003, pet. ref'd). In addition, weighing the appropriate factors, we also find that the probative value was not so slight so as to be substantially outweighed by the danger of unfair prejudice to appellant.[10]

We overrule appellant's sixth and seventh issues.

**Conclusion**

The trial court's judgment is affirmed.

---

10. Upon defense counsel's request for a Rule 403 analysis, the trial court stated:

> I am basing my ruling on the fact that certainly the relationship of the parties, the fact that they knew one another, shedding light on the defendant being allowed access to the complainant's home, initially there's already been reference to how he shook hands and was welcomed into the home. There's testimony about drug usage at the time, within an hour of death. And the relationship, all of that, certainly it becomes far more probative than prejudicial. So the objection to that item is overruled.