



# MEMORANDUM OPINION

No. 04-08-00931-CR

Robert **HERRERA** Sr.
Appellant

v.

The **STATE** of Texas,
Appellee

From the 38th Judicial District Court, Medina County, Texas
Trial Court No. 08-06-9914-CR
Honorable Mark Luitjen, Judge Presiding

Opinion by:    Marialyn Barnard, Justice

Sitting:       Catherine Stone, Chief Justice
               Karen Angelini, Justice
               Marialyn Barnard, Justice

Delivered and Filed: December 23, 2009

AFFIRMED

A jury found Robert Herrera Sr. guilty of aggravated sexual assault of a child. On appeal,

Herrera contends the trial court did not have jurisdiction to hear the case. Herrera further contends

the trial court erred in: (1) permitting several of the State's witnesses to testify; (2) admitting

evidence of Herrera's prior conviction; (3) improperly instructing the jury; and (4) admitting other

inadmissible evidence. Herrera further argues the cumulative effect of all the trial court's errors denied him a fair trial. We affirm the trial court's judgment.

## BACKGROUND

Herrera was charged with aggravated sexual assault of a child after his wife's step-daughter, A.M., made general allegations of sexual abuse to her Bible study teacher, Rebecca McClung. McClung reported the incident to Child Protective Services ("CPS"), and CPS initiated an investigation. CPS investigator, Mindy Hamilton, contacted A.M.'s mother, Melissa Herrera, and interviewed A.M. Thereafter, CPS removed all children from Melissa's and Herrera's custody, and Herrera was arrested.

During trial, in addition to A.M. and Melissa's testimony, the jury heard testimony from the following State's witnesses: (1) Mindy Hamilton; (2) Dr. Nancy Kellogg; (3) Rebecca McClung; and (4) Judy Hendrix, a church acquaintance of Herrera. After all the evidence was presented, the jury found Herrera guilty of aggravated sexual assault of a child. During the sentencing phase of trial, Herrera pled not true to the enhancement count in the indictment, which alleged a prior conviction for aggravated sexual assault of a child. The judge found the allegation true and sentenced Herrera to a term of imprisonment for life.

## DISCUSSION

### *Jurisdiction*

We first address Herrera's jurisdictional issue. Herrera contends the trial court lacked jurisdiction because the indictment was not properly presented within the time constraints set forth in article 32.01 of the Texas Code of Criminal Procedure ("the Code"). *See* TEX. CODE CRIM. PROC. art. 32.01 (Vernon 2006) (specifying time frame within which indictment must be presented to avoid

case from being dismissed and bail discharged). According to Herrera, he was indicted on August 7, 2003, but the indictment was not presented to the district court until June 5, 2008, rendering the indictment untimely. Herrera contends the State did not have good cause for the untimely presentment.

Failure to present an indictment on or before "the last day of the next term of the court" or "the 180th day after the date of commitment or admission to bail," whichever is later, results in dismissal of the indictment and discharge from bail unless the State can show good cause for the delay. *Id.*; *see also Ex parte Mann*, 34 S.W.3d 716, 718 (Tex. App.–Fort Worth 2000, no pet.). However, a defendant must seek to dismiss an untimely indictment under article 32.01 before the indictment is returned or error as to the timeliness of the return of the indictment is waived. *Brooks v. State*, 990 S.W.2d 278, 285 (Tex. Crim. App. 1999) (holding defendant waived right to challenge indictment for untimeliness since indictment was already returned); *see also Hixson v. State*, 1 S.W.3d 160, 163 (Tex. App.—Corpus Christi 1999, no pet.) (holding complaint of untimely indictment must be preserved by pre-indictment objection); *Fisk v. State*, 958 S.W.2d 506, 508-09 (Tex. App.—Texarkana 1997, pet. ref'd) (holding defendant's failure to move to set aside indictment as untimely before indictment was returned waives right to complain as to indictment's untimeliness).

We hold Herrera waived his complaint by failing to file a motion to dismiss the indictment before the date the indictment was returned. *See* TEX. CODE CRIM. PROC. art. 32.01; *Brooks*, 990 S.W.2d at 285; *Hixson*, 1 S.W.3d at 163; *Fisk*, 958 S.W.2d at 508-09. The record reflects the indictment was filed, i.e., returned, on June 5, 2008, and at no point, much less before June 5, 2008, did Herrera file a motion to dismiss the indictment. Accordingly, because Herrera failed to file a

motion to dismiss, he failed to preserve his complaint for our review, and we overrule his jurisdictional point of error. *See id.*

### *Witnesses' Testimony*

**A. Testimony of Dr. Nancy Kellogg**

In his first and second points, Herrera contends the testimony of Dr. Nancy Kellogg was improperly admitted because it constituted bolstering and violated his constitutional right to a fair trial. As to bolstering, Herrera contends Kellogg's testimony that one-third to one-half of children of confirmed sexual assaults do not present behavior problems, and ninety percent of children of confirmed sexual assaults have normal physical exams was offered to bolster the truthfulness of A.M's testimony and make A.M.'s testimony more credible.

The State argues Herrera failed to preserve these complaints for appellate review. We agree. Herrera's trial objection does not comport with his complaint on appeal. To preserve an issue for appeal, an appellant must make a timely and specific objection at trial. TEX. R. APP. P. 33.1(a); *see Turner v. State*, 805 S.W.2d 423, 431 (Tex. Crim. App. 1991); *Hernandez v. State*, 171 S.W.3d 347, 358 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd.) (explaining that objection must alert trial court to specific complaint). A trial objection must correspond with the issue presented on appeal. *See id*. "An objection stating one legal basis may not be used to support a different legal theory on appeal." *Edwards v. State*, 97 S.W.3d 279, 287 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd.).

In this case, Herrera did not object to Kellogg's testimony on grounds of improper bolstering or denial of a fair trial. When the State asked Kellogg whether, based on her research, a large percentage of sexually abused children exhibited symptoms of abuse, Herrera objected and stated, "I think that's beyond the scope again of this witness. It's not relevant to the proceeding." Kellogg

then testified that a third of sexually abused children do not present any behavior changes or problems. Questioning continued, and throughout the State's line of questioning dealing with Kellogg's opinion regarding findings with respect to sexually abused children and their behavior, Herrera made several objections, including "I'm going to object, Judge, in terms of relevance," and "I'm going to reiterate my objection. It's beyond the scope of this witness." Based on the record before us, it is clear Herrera objected to Kellogg's testimony on the grounds of relevance, not improper bolstering or denial of a fair trial. Accordingly, because the objection made at trial does not comport with the issues presented on appeal, Herrera waived these complaints for appeal, and we overrule his first and second points. *See* TEX. R. APP. P. 33.1(a)(1); *Turner*, 805 S.W.2d at 431; *Hernandez*, 171 S.W.3d at 358.

## B. Outcry Witness

In his fifth point of error, Herrera contends the trial court erred in allowing the wrong person to testify as the outcry witness. The crux of Herrera's argument centers on whether the trial court erred in designating Mindy Hamilton as the outcry witness, and therefore, whether Hamilton was the proper person to testify as the outcry witness during the trial. According to Herrera, Rebecca McClung should have been designated as the outcry witness because McClung was the first person to which A.M. made the alleged outcry. We disagree.

We review a trial court's determination of a true outcry witness under an abuse of discretion standard. *Garcia v. State*, 792 S.W.2d 88, 92 (Tex. Crim. App. 1990); *Reyes v. State*, 274 S.W.3d 724, 727 (Tex. App.—San Antonio 2008, pet. ref'd). A trial court has broad discretion in determining the true outcry witness. *Id*. Under an abuse of discretion standard, we will uphold a trial court's

finding so long as the finding is supported by the evidence. *Id.* Only when the record reveals a clear abuse of discretion will we disturb the trial court's finding. *Id.*

Pursuant to article 38.072 of the Code, upon timely notice, a party may designate a witness as an outcry witness. TEX. CODE CRIM. PROC. ANN. art. 38.072 § 2(b)(1-3) (Vernon 2005); *see Reyes*, 274 S.W.3d at 727. Under article 38.072, the trial court must conduct a hearing outside the presence of the jury and evaluate the offered evidence to determine whether the witness may be designated as an outcry witness. *Id.* During the hearing, the child victim must either testify or be available to testify. *See* TEX. CODE CRIM. PROC. ANN. art. 38.072 § 2(b)(3). To qualify as an outcry witness, the witness's testimony must be more than a general allegation that sexual abuse occurred. *Garcia*, 792 S.W.2d at 91; *Reyes*, 274 S.W.3d at 727. The witness's testimony must indicate that the child victim described the offense to that witness. *Id.*

Before trial, the State filed a written notice that CPS investigator Mindy Hamilton would be called as an outcry witness. At that time, defense counsel did not object or request a pre-trial article 38.072 hearing. During trial, however, when the State called McClung as a witness, defense counsel objected on the basis that McClung was the first person to which the A.M. made the alleged outcry, and therefore, McClung was the correct outcry witness. The trial court then held an article 38.072 hearing and heard testimony from Hamilton, the witness who was designated by the State as the outcry witness.

During the article 38.072 hearing, Hamilton testified A.M. first denied physical abuse. Hamilton went on to testify that during the course of her interview with A.M., however, A.M. asked Hamilton "if it was okay for [Herrera] to touch them, her private parts[.]" A.M. then drew a picture of a stick figure and identified herself as the stick figure. According to Hamilton's testimony, A.M.

drew an arrow pointing to the stick figure and stated the arrow showed where Herrera touched her, which was "where she pees from." A.M. continued by detailing "[Herrera] takes her panties off and lays her on the bed. And then he takes his clothes off and lays on top of her." Additionally, Hamilton testified that A.M. stated when she asked Herrera to stop, he would put on a movie instead. Hamilton also testified A.M. indicated she did not tell anyone else about what Herrera did to her. On cross-examination, Hamilton testified A.M. never stated that Herrera put his finger in her vagina or anus. On re-direct, Hamilton again testified A.M. stated she had told no one about Herrera's actions because she did not want to get Herrera into trouble.

We hold Hamilton's testimony was sufficient to sustain the trial court's determination that Hamilton was an outcry witness. *See Garcia*, 792 S.W.2d at 92; *Reyes*, 274 S.W.3d at 727. Unlike Hamilton's testimony, McClung's testimony established that A.M. made only a general allegation of abuse to McClung. According to McClung's testimony, A.M. described herself as unhappy in her prayer journal and drew a picture of a bed with people near it. While McClung testified that A.M.'s actions alarmed her, McClung's testimony does not arise to more than a general allegation that abuse occurred. *See Garcia*, 792 S.W.2d at 91; *Reyes*, 274 S.W.3d at 727. Hamilton's testimony, on the other hand, established she was the true outcry witness because A.M.'s statements to her were more than general allegations of abuse. *See id*. Hamilton's testimony regarding A.M.'s allegation not only alerted Hamilton that A.M. was being abused by Herrera, but also informed her as to the details of that abuse as told by A.M. *See id*. Accordingly, we hold the trial court did not abuse its discretion in determining Hamilton was the outcry witness, and therefore, in allowing Hamilton to testify as the outcry witness.

Additionally, in his sixth point, Herrera contends the trial court erred in failing to call Rebecca McClung to testify during the article 38.072 hearing testimony. According to Herrera, the trial court did not make its best effort to determine who was the true outcry witness because if it had called McClung, the trial court would have found McClung was the true outcry witness. Herrera contends that as a result, the trial court erroneously determined Hamilton was the outcry witness. We also disagree with Herrera's sixth point regarding the issue of an outcry witness.

There is no requirement that McClung needed to be called to testify during the article 38.072 hearing; rather, article 38.072 of the Code only requires the child witness to be available to testify. *See* TEX. CODE CRIM. PROC. ANN. art. 38.072 § 2(b)(3). After reviewing the record, Hamilton's statements sufficiently detailed the alleged abused as told by A.M. *See Garcia*, 792 S.W.2d at 91; *Reyes*, 274 S.W.3d at 727. There is nothing in the record to indicate the trial court did not thoroughly consider the evidence when determining whether Hamilton was the proper outcry witness.

Accordingly, because the evidence supports the trial court's finding, we hold the trial court did not abuse its discretion when conducting the 38.072 hearing and determining Hamilton was the true outcry witness. We overrule Herrera's fifth and sixth points of error.

### C. Testimony of Judy Hendrix

In his seventh and eighth grounds of error, Herrera contends the trial court erred when it allowed Judy Hendrix to testify because the State did not reveal her existence during discovery in violation of the discovery order. Herrera, however, specifies his contention is not an assertion that the State acted in bad faith by withholding Hendrix's existence, but instead his contention is that the State failed in its duty to discover Hendrix earlier than the day before trial. Herrera also contends the trial court erred in denying his request for a continuance to prepare for the witness.

We review a trial judge's decision to admit or exclude evidence under an abuse of discretion standard. *Oprean v. State*, 201 S.W.3d 724, 726 (Tex. Crim. App. 2006). Only if the trial judge's decision to admit evidence was outside the zone of reasonable disagreement will we overrule the trial court's ruling. *Id*. With regard to witnesses, "[n]otice of the State's witnesses shall be given upon request." *Martinez v. State*, 867 S.W.2d 30, 39 (Tex. Crim. App. 1993). If the trial court allows a witness who does not appear on the State's witness list to testify, then we must determine whether the prosecutor's actions constituted bad faith and whether the defense could have reasonably anticipated the witness' testimony. *Id*.

We also review the granting or denial of a motion for continuance under an abuse of discretion standard. *Heiselbetz v. State*, 906 S.W.2d 500, 511 (Tex. Crim. App. 1995). To show the trial court abused its discretion in refusing to grant a motion for continuance, the defendant must show he was prejudiced by his counsel's inadequate preparation time. *Id.; Duhamel v. State*, 717 S.W.2d 80, 83 (Tex. Crim. App. 1986).

When Hendrix testified, Herrera objected that none of her statements, in particular her statements regarding an alleged admission made by Herrera, had been disclosed to him despite his timely filed discovery requests. The State responded that although CPS attempted to take a statement from Hendrix, no statement was ever recorded, and therefore, no statement existed that could be submitted to Herrera. The State added it was unaware of Hendrix's existence until the day before trial. Herrera again objected, requesting a delay and a mistrial. The trial court denied Herrera's requests, but provided Herrera with an opportunity to listen to Hendrix's testimony and cross-examine Hendrix outside the presence of the jury.

After reviewing the record, there is nothing in the course of the proceeding to indicate the State acted in bad faith, or willfully withheld Hendrix's existence and testimony in violation of any discovery order. *See Oprean*, 201 S.W.3d at 726; *Martinez*, 867 S.W.2d at 39. First, the record does not reflect that a discovery order was entered by the trial court as Herrera suggests. Given the lack of a discovery order, we cannot presume the State acted willfully and violated the nonexisting order. *See Oprean*, 201 S.W.3d at 726 (holding that evidence willfully withheld from disclosure under discovery order should be excluded from evidence). Additionally, other than a generalized assertion, Herrera does not provide any support for his contention that the State failed in its alleged duty to collect all of its evidence during discovery pursuant to his discovery request. Instead, Herrera bases his contention on case law outlining the trial court's method for determining whether the State acted in bad faith for not disclosing the witness. Nevertheless, Herrera firmly states he "is not asserting that the State committed bad faith." Given this and our review of the record, we hold there is nothing to establish the trial court abused its discretion in admitting Hendrix's testimony.

Herrera also contends the denial of his request for a continuance deprived him of the opportunity to adequately prepare and revise his theory and thereafter cross-examine the witness. We disagree. The trial court gave Herrera an opportunity to listen to Hendrix's testimony and cross-examine Hendrix outside the presence of the jury. The trial court then went on and stated, "If you have further concerns, then I will entertain any objections you have at that time[,]" providing Herrera with an additional opportunity to express concerns regarding Hendrix. At the conclusion of Hendrix's testimony, Herrera repeated his objection to the testimony on several grounds, including his inability to prepare, and moved for a mistrial. The trial court then denied Herrera's motions for continuance and mistrial. There is nothing in the record to show Herrera was prejudiced by inadequate preparation

time, and therefore, we cannot conclude that the trial court abused its discretion. *See Heiselbetz*, 906 S.W.2d at 511; *Duhamel*, 717 S.W.2d at 83.

### *Prior Conviction*

In his fourth point of error, Herrera contends State's Exhibits 14 and 15, evidencing his prior conviction for aggravated sexual assault of a child, were not properly authenticated business records under Texas Rule of Evidence 803(6). According to Herrera, the sponsoring witness's testimony failed to establish the exhibits were true and accurate copies because the witness testified she did not have personal knowledge that the records were true and accurate copies of the documents in Herrera's file.

Texas Rule of Evidence 803(6) allows documents kept in the course of regularly conducted business to be admitted into evidence as an exception to the hearsay rule. TEX. R. EVID. 803(6); *Reyes v. State*, 48 S.W.3d 917, 921 (Tex. App.—Fort Worth 2001, no pet.). Rule 803(6) requires the proponent of the evidence to prove that the document was made at or near the time of the events recorded, and the document must be made from information collected by a person, who had knowledge of the events. *Id*. The document must also be made or kept in the course of regularly conducted business. *Id*. The predicate for admission of a business record under Rule 803(6) may be established by a predicate witness who has personal knowledge of the manner in which the records were prepared. Reyes, 48 S.W.3d at 921 (citing *Brooks v. State*, 901 S.W.2d 742, 746 (Tex.App.-Fort Worth 1995, pet. ref'd)). The witness does not have to be the creator of the record or have personal knowledge of the record. *Id*.

Following the jury's verdict of guilt, the case proceeded to the punishment phase before the trial judge. As to the enhancement count of aggravated sexual assault, Herrera entered a plea of not

true. In support of the allegation in the indictment, the State called Melissa Plate, an employee of the Bexar County District Clerk's Office, as a witness. During the course of her testimony, the State offered State's Exhibits 14 and 15, which were copies of the judgments rendered against Herrera in Bexar County, with one of the judgments reflecting a conviction in the charge alleged in the enhancement paragraph. At that time, Herrera made the following objection, "I object as to hearsay as to the State's 14 and 15 at this time. The witness doesn't have the knowledge." The trial judge overruled defense counsel's objection, and after hearing the evidence, the trial judge found the allegation true.

We hold the record was properly authenticated for purposes of Rule 803(6). Plate testified she was the custodian of records for the Bexar County District Clerk's office and had personal knowledge of the general practice by which the records were prepared. Plate also testified Herrera's records were made by a clerk of the Bexar County District Clerk's office, who compiled the records and made entries to the records at or near the time the events being entered took place. Although Plate admitted she did not have personal knowledge of the contents of Herrera's record, and did not personally pull and copy the files, such testimony was unnecessary. *See Reyes*, 48 S.W.3d at 921. Plate's testimony sufficiently satisfied the necessary predicate by showing she had personal knowledge of the manner by which the records were prepared. *See Reyes*, 48 S.W.3d at 921. Additionally, there is nothing in the record to suggest the judgments were so untrustworthy as to justify exclusion. *See Brooks*, 901 S.W.2d at 74. Accordingly, we overrule Herrera's fourth ground of error.

### *Jury Instruction*

In his ninth issue on appeal, Herrera contends the trial court erred in instructing the jury that "penetration is complete, no matter how slight."  Herrera contends the jury instruction constituted a bolstering, misleading, and impermissible comment on the evidence.

At the conclusion of the evidentiary phase of trial, the trial court submitted the jury instruction, which included the following sentence, "You are instructed that penetration is complete no matter how slight."  Herrera objected, contending the instruction unnecessarily defined the word "penetration," and mislead the jury with an "unhelpful" comment.

Jury instructions are a matter within a trial court's discretion, and we review a trial court's instruction to the jury under an abuse of discretion standard.  *Wesbrook v. State*, 29 S.W.3d 103, 122 (Tex. Crim. App. 2000).  "Charging the jury that 'penetration is complete however slight' has been held to be a proper instruction in a rape case[,]" i.e., an aggravated sexual assault case.  *See Galloway v. State*, 716 S.W.2d 556, 557 (Tex. App.—Waco 1986, pet. ref'd).  In this case, the instruction was not a comment on the weight of the evidence, but rather an accurate statement of law.  *See Sherbert v. State*, 531 S.W.2d 636, 637 (Tex. Crim. App. 1976) (explaining State's burden of proving of penetration is met when penetration is proven by showing any penetration, no matter how slight); *Rawlings v. State*, 874 S.W.2d 740, 744 (Tex. App.—Fort Worth 1994, no pet.) (highlighting trial court's statement regarding penetration is an instruction explaining when the penetration element of the State's case would be satisfied and not a comment).  The trial court's instruction informed the jury as to how the penetration element of the State's case could be satisfied.  *See id.*  By including an accurate statement of law that instructs the jurors as to what type of evidence is necessary to meet the

penetration element of the offense, the trial court did not bolster, mislead, or impermissibly comment on the evidence. *See id.* Accordingly, Herrera's ninth complaint is overruled.

### *Inadmissible Evidence*

In his tenth and eleventh issues on appeal, Herrera contends the trial court erred in admitting evidence that A.M. was in counseling since the alleged sexual assaults, and evidence that CPS obtained temporary managing conservatorship over Melissa and Herrera's children and removed them. Herrera contends this evidence concerned "other crimes, wrongs, or acts," and was not listed or included in the State's Rule 404(b) notification. *See* TEX. R. EVID. 404(b) (stating evidence of other crimes, wrongs or acts, is generally inadmissible to prove character). Herrera also contends the evidence was irrelevant, and the prejudicial effect of the evidence substantially outweighed any probative value. As a result, Herrera contends the evidence was harmful.

On direct examination, Mindy Hamilton testified that during the course of CPS's investigation, CPS removed the Herrera children from Melissa and Herrera's custody. Herrera objected, claiming the evidence was not relevant and was more prejudicial than probative. The trial court overruled Herrera's objection, and Hamilton continued by stating that CPS sought temporary managing conservatorship of the children. On re-direct examination, Hamilton also testified A.M. had been going to counseling ever since the alleged assault.

We need not address Herrera's contention regarding "other crimes, wrongs, or acts" because Herrera did not preserve this issue for appeal. To preserve an issue for appeal, an appellant must make a timely and specific objection to the evidence that comports with his complaint on appeal. TEX. R. APP. P. 33.1(a); *Turner*, 805 S.W.2d at 431; *Hernandez*, 171 S.W.3d at 358. The record reflects Herrera only objected to the evidence on the grounds that it was irrelevant and more

prejudicial than probative, not that the evidence was inadmissible under Rule 404(b). Accordingly, Herrera waived his Rule 404(b) complaint. *See id.*

Whether evidence is admissible under Rules 401 and 403 of the Texas Rules of Evidence is within the sound discretion of the trial court. *Montgomery v. State*, 810 S.W.2d 372, 386, 389 (Tex. Crim. App. 1990) (opinion on reh'g). Rule 401 describes relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence." TEX. R. EVID. 401; *Montgomery*, 810 S.W.2d at 386. Rule 403 allows for the exclusion of otherwise relevant evidence when its probative value "is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." TEX. R. EVID. 403. Rule 403 favors the admission of relevant evidence and carries a presumption that relevant evidence will be more probative than prejudicial. *Montgomery*, 810 S.W.2d at 389. A Rule 403 analysis includes consideration of the following factors in determining the probativeness of the evidence: (1) the potential of the evidence to impress the jury in some irrational, but nevertheless indelible way; (2) the time the proponent needs to develop the evidence; and (3) the proponent's need for the evidence. *See id.* at 389-90. We review a trial court's determination to admit evidence under Rules 401 and 403 under an abuse of discretion standard. *See id.*

Here, the evidence was relevant because it had a tendency to make the determination that Herrera sexually assaulted A.M. more or less probable. *See* TEX. R. EVID. 401; *Sessums v. State*, 129 S.W.3d 242, 250 (Tex. App.—Texarkana 2004, pet. ref'd). Evidence regarding A.M.'s need for counseling is probative circumstantial evidence that increases the likelihood that A.M. was sexually

abused by Herrera. *See Cohn*, 849 S.W.2d 817, 820 (Tex. Crim. App. 1993) (psychologist's testimony that child victims exhibited anxiety and needed counseling is circumstantial evidence that *something* happened to them and makes it more plausible children may have been sexually abused by defendant)*; Sessums*, 129 S.W.3d at 250 (holding evidence of child victim's trauma, injuries, and prognosis was relevant because it logically increased possibility child victim was abused by defendant). Additionally, evidence of CPS's investigation, including testimony that CPS found it necessary to remove the children from Melissa and Herrera's custody, is probative circumstantial evidence that tends to show CPS believed something was occurring that warranted removal, making it more plausible that A.M. was being sexually abused in the home by Herrera. *See* TEX. R. EVID. 401. Accordingly, the trial court did not abuse its discretion in admitting the evidence as relevant. *See Montgomery*, 810 S.W.2d at 386.

We also hold under Rule 403, the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice. *See* TEX. R. EVID. 403. "'Unfair prejudice' does not, of course, mean that the evidence injures the opponent's case – the central point of offering evidence. Rather it refers to 'an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.'" *Cohn*, 849 S.W.2d at 820 (quoting GOODE, ET. AL., TEXAS PRACTICE: TEXAS RULES OF EVIDENCE: CIVIL AND CRIMINAL, § 403.2 (1988)). In this case, the evidence constitutes circumstantial evidence that something happened to A.M. to warrant her need for counseling after the alleged events occurred and her removal from the home by CPS during its investigation. Given that the evidence is probative of the likelihood Herrera sexually assaulted A.M., there is nothing in the record to suggest the trial court abused its discretion and admitted the evidence on an improper basis. *See Cohn*, 849 S.W.2d at 820; *Montgomery*, 810 S.W.2d at 386.

Accordingly, we hold the trial court did not abuse its discretion in admitting the evidence and overrule Herrera's tenth and eleventh points. *See Montgomery*, 810 S.W.2d at 386.

### *Cumulative Effect*

In his last point, Herrera contends the cumulative effect of the errors alleged in points one through eleven deprived him of a fair trial. Having determined Herrera's eleven complaints were waived or lacked merit, there is no basis for his complaint of cumulative error. Accordingly, we overrule Herrera's last point.

### CONCLUSION

Based on the foregoing, we affirm the trial court's judgment.

Marialyn Barnard, Justice

Do Not Publish