Affirmed and Memorandum Opinion filed July 29, 2008








Affirmed and Memorandum Opinion filed July 29, 2008.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-07-00110-CR

____________

 

RODGER EUGENE MANSFIELD, JR., Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 351st
District Court

Harris County, Texas

Trial Court Cause No. 1013210

 



 

M E M O R A N D U M  O P I N I O N

A jury found appellant, Rodger Eugene Mansfield, Jr.,
guilty of the sexual assault of K.M., a person under the age of fourteen, and
assessed punishment at twenty years confinement in Texas Department of Criminal
Justice, Institutional Division, and imposed a fine of $5,000.  The trial court
sentenced appellant accordingly.  In two issues, appellant challenges the trial
court=s evidentiary
rulings at the punishment phase of his trial.  We affirm.








I.  Factual and Procedural Background

The complainant, K.M., who was eighteen at the time of
trial, is appellant=s daughter.  At the guilt-innocence phase
of trial, she testified that, when she was between six and nine years old,
appellant touched her on and in her vagina with his hand and fingers Atoo many times to
count.@[1]  K.M. further
testified that appellant touched her again when she was between the ages of
nine and eleven or twelve.

According to K.M., appellant told her what he was doing was
wrong and begged her not to say anything.  K.M. stated that she loved and
trusted her father, believed him when he said he would stop, and wanted her
father to change, but he did not do so.  K.M. stated that when she was fifteen
years old, she told her girlfriend and her girlfriend=s mother what had
happened.

Appellant testified in his own defense and denied K.M.=s accusations. 
The jury found appellant guilty.

K.M. testified for the State during the punishment phase of
appellant=s trial.  When the State asked K.M. to recite a poem
she had written and offered the poem in evidence, appellant objected on  (1)
the ground it was Asimply not relevant to any issue in this
case,@ and (2) Athe additional
ground of the federal confrontation cross-examination grounds and hearsay, not
able to confront or cross-examine her at the time the poem was written.@  The court
overruled the objection and K.M. testified:

The title of the poem is ATry to let Go!@








Not forgiven, but yes you=re missed, as the sadness swallows
me whole.  The pain you caused, may God spare your soul.  I hope to let go,
still the grudge stands firm.  The fatherhood used [sic] show, and I thought of
no harm.  Now you=re gone, locked away.  My heart is
sore, but at least now I=m safe.  Still missing the father I
long for.  The bottle remodeled his face, he now is no more.  You. . . a beast
has taken his place.  My feelings so mixed and unpure.  I look to a spirit to
lift my anger.  Jesus Christ has taught me well.  I know now he is my savior. .
. Sorry, dad, for promising I=ll never tell.

 

Appellant=s fiancee and his brother=s girlfriend
testified on his behalf.  In addition, appellant called his father, Rodger
Mansfield, Sr. (AMansfield@).  Without
objection, Mansfield testified he had known appellant for his entire life and
appellant had not been convicted of any felonies in this or any other state.[2] 
Defense counsel then  asked Mansfield whether his son had been on felony
probation, and the State objected on the ground the information was outside the
witness=s personal
knowledge.  The court sustained the objection, and the following transpired:

Q.  (By Mr. Burkholder [defense counsel]) Are you
familiar with your son=s criminal record?

A. [Mansfield] Yes.

Q.  Has he received probation, felony probation in this or any other
state?

MR. LEGRANDE [the prosecutor]: Objection, Your
Honor, outside personal knowledge.

THE COURT: Sustained.

MR. BURKHOLDER: May we
approach the bench?

THE COURT: Yes.

(At the Bench, on the
record)

MR. BURKHOLDER: I don=t understand why he can=t testify, Your Honor.

THE COURT: He doesn=t [sic] live with him the whole time, he hasn=t been with him the whole time.

MR. BURKHOLDER: It goes to the weight, Your Honor,
not the credibility.








THE COURT: I sustained
the objection.

 

Defense counsel subsequently repeated his request to call
Mansfield Ato establish the very limited purpose that [appellant]
has not been placed on probation, felony probation in this state or any other
state.  I believe he=s sufficiently familiar with his son=s criminal record
that he can testify to those facts.@  The court
responded that appellant had not always lived with his father: AHe went to Alaska
for a year, so he doesn=t know of his own personal knowledge.@  The court again
overruled appellant=s objection to exclusion of the evidence. 
Defense counsel then indicated he was calling appellant to testify, but would
not be doing so, but for the court=s ruling.

On direct examination, appellant testified he had not been
convicted of a felony or placed on felony probation in this or any other
state.  On cross-examination, the State questioned appellant about his five- to
six-month stay in Alaska during the investigation of K.M.=s accusations, the
circumstances of his arrest in Alaska for the present offense, his extradition
to Texas, and his failure to make child support payments.[3] 
Appellant admitted that during the arrest he was unruly, intoxicated, and had
pleaded guilty to disorderly conduct and criminal mischief.  When asked whether
he respected the jury=s verdict, appellant replied he did not.

The jury was charged on community supervision as follows:








The defendant filed a sworn motion for community
supervision herein, alleging that he has never before been convicted of a
felony in this State or any other State.  Our statute provides that where the
Jury finds the defendant guilty and the punishment assessed by the Jury shall
not exceed ten years[] imprisonment in the institutional division of the Texas
Department of Criminal Justice, and the Jury shall find in their verdict that the
defendant has never before been convicted of a felony in this or any other
state, the Jury may recommend that the defendant be granted community
supervision.

. . .

Now, having found the defendant guilty and if the
punishment assessed by you is not more than ten years[] confinement in the
institutional division of the Texas Department of Criminal Justice, and if you
further find that he has never been convicted of a felony in this State or any
other State, you may in your discretion recommend that the defendant be given
community supervision.  If you desire the defendant to be placed on community
supervision, let your verdict show that you find that the defendant has never
been convicted of a felony in this State or in any other State and further show
that you recommend community supervision.

If you do not desire to recommend community
supervision, you will not mention the matter of community supervision at all in
your verdict.

The
jury assessed appellant=s punishment at twenty years confinement
and a fine of $5,000, and made no mention of community supervision in its
verdict.  The trial court rendered judgment on the jury=s verdict.  This
appeal timely ensued.  

II.  Issues
Presented

Appellant=s complaints in this court are directed at
errors alleged during the punishment phase of his trial only.  In his first
issue, appellant argues the trial court arbitrarily applied the
lack-of-personal-knowledge standard in Texas Rule of Evidence 602 to exclude
evidence he offered to meet his burden of proving he was eligible for community
supervision.  In his second issue, appellant argues the trial court Acommitted reversible
error@ in allowing K.M.
to read her poem to the jury.

III.  Standard of Review








We
review the trial court=s evidentiary rulings for abuse of discretion.  Montgomery
v. State, 810 S.W.2d 372, 379 (Tex. Crim. App. 1990) (en banc).  We will
not disturb the trial court=s ruling if it is Awithin the zone of reasonable
disagreement.@  Winegarner v. State, 235 S.W.3d 787, 790 (Tex. Crim. App.
2007).  Instead, we will uphold the ruling if it is reasonably supported by the
record and correct on any theory of law applicable to the case.  Willover v.
State, 70 S.W.3d 841, 845 (Tex. Crim. App. 2002).

IV.  Analysis

A.      Felony
Probation Testimony

In his first issue, appellant complains of the trial court=s exclusion of
Mansfield=s testimony regarding whether appellant had ever
received felony probation.  As noted above, the State objected to this
testimony based on a Alack of personal knowledge,@ under Texas Rule
of Evidence 602.  As is relevant here, this rule provides:  AA witness may not
testify to a matter unless evidence is introduced sufficient to support a
finding that the witness has personal knowledge of the matter.@  Tex. R. Evid. 602.  

The trial court, in sustaining the State=s objection to
this testimony, stated appellant had not always lived with his father
(Mansfield) and also referred specifically to the time appellant spent in
Alaska.  Appellant=s only response to this ruling was that he
did not understand why Mansfield could not testify and that whether Mansfield
had personal knowledge of appellant=s criminal record
went to the weight of the evidence, rather than Athe credibility.@  But because
there was uncontroverted evidence that appellant had not resided with his
father his entire life, and, in fact, had been to Alaska for several months, we
cannot say that the trial court=s exclusion of this evidence under Rule
602 was outside the Azone of reasonable disagreement.@[4]  Winegarner,
235 S.W.3d at 790.








Here, however, appellant argues that the trial court=s interpretation
of the personal-knowledge requirement is inconsistent with case law
interpreting Rule 602.  In support, he relies on Trevino v. State, 577
S.W.2d 242 (Tex. Crim. App. 1979), and Wright v. State, 178 S.W.3d 905
(Tex. App.C[Houston 14th Dist.] 2005, pet. ref=d).  Neither of
these cases support appellant=s argument.

First, the issue in Trevino was not whether the
trial court abused its discretion in admitting or excluding evidence, but
whether the defendant had presented sufficient evidence of his eligibility for
community supervision to submit the issue to the jury.[5] 
Trevino, 577 S.W.2d  at 243.  Thus, it is inapposite. 

In Wright, the appellant asserted that the State=s in-court
demonstration of its theory of how the murder victim died confused Ahigh drama@ with reality and
deprived the appellant of a fair trial.  178 S.W.3d at 910, 917.  As part of
that issue, the appellant argued the court should not have allowed the demonstration
because, contrary to Rule 602, the State=s witness
testifying in support of the demonstration had no personal knowledge of the
events about which he testified, and the State failed to show the demonstration
was substantially similar to the events it sought to portray.  Id. at
918.  The witness upon whose testimony the demonstration was based was a
crime-scene detective who had viewed both the decedent=s body and the
scene itself and observed the appellant=s erratic behavior
after the crime.  Id.  This court concluded, AAll of these facts
[the detective] knew from personal knowledge and experience, and his testimony
about them did not violate Rule 602.@  Id.  We
further concluded that, under Texas Rule of Evidence 701,[6]
A[t]hose parts of
the demonstration for which [the detective] lacked personal knowledge were
admissible as lay opinion because they were reasonable inferences from those
facts he did know by personal knowledge.@  Id. at
918B19.  








Importantly, in this case, appellant did not assert Rule
701 as a basis for admission of Mansfield=s testimony at
trial.  Failure to present a particular argument to the trial court in support
of the admission of excluded evidence waives that argument for appeal.  Reyna
v. State, 168 S.W.3d 173, 176B79 (Tex. Crim.
App. 2005); see also Clark v. State, 881 S.W.2d 682, 692B94 (Tex. Crim.
App. 1994) (en banc).  Here, appellant conflates Rules 602 and 701 in his
briefing, arguing that Mansfield=s testimony
regarding whether appellant had ever been placed on felony probation was a
reasonable inference from facts within Mansfield=s personal
knowledge.  But because appellant did not present this argument to the trial
court, it has been waived.  See Reyna, 168 S.W.3d at 176B79; Clark,
881 S.W.2d at  692B94.

Appellant additionally argues we should look beyond the
abuse-of-discretion standard.  Relying on Holmes v. South Carolina, he
argues the trial court=s application of Rule 602 deprived him of
his constitutional right to present a defense.  See 5547 U.S. 319, 330B31, 126 S. Ct.
1727, 1734B35 (2006) (holding criminal defendant=s federal
constitutional rights violated by evidence rule under which defendant could not
introduce proof of third-party guilt if prosecution had introduced forensic
evidence that, if believed, strongly supported a guilty verdict).  As discussed
above, however, appellant never presented this argument to the trial court. 
Thus, appellant has not preserved his constitutional argument for appeal.[7]









We conclude the trial court did not abuse its discretion in
excluding Mansfield=s testimony that appellant had not been
placed on felony probation, and because he did not present the argument to the
trial court, we decline to review appellant=s constitutional
argument stemming from exclusion of that evidence.  Accordingly, we overrule
appellant=s first issue.

B.      Admission
of K.M.=s Poem

In his second issue, appellant contends the trial court
committed reversible error by allowing K.M. to read her poem to the jury.  On
appeal, he argues (1) the poem was inadmissible under Rule 401 because it was
not relevant, and (2) the poem was inadmissible under Rule 403 because the
prejudicial nature of the poem outweighed its probative value.  See Tex. R. Evid. 401, 403.

In the trial court, however, appellant objected to the
evidence only on the grounds of relevancy, hearsay, and denial of his right to
confrontation.  He did not request that the trial court balance the probative
value of the evidence against its prejudicial effect.  He has therefore
forfeited review of this question, and we consider only his Rule 401 argument
that the evidence was not relevant.  See Bell v. State, 938 S.W.2d 35,
49 (Tex. Crim. App. 1996) (holding that when defendant objected on relevance
but not on Rule 403, Rule 403 issue was not preserved for review).[8]








At the punishment phase, the State and the defendant may
offer evidence on Aany matter the court deems relevant to
sentencing . . . .@  Tex.
Code Crim. Proc. Ann. art. 37.07, sec. 3(a)(1) (Vernon Supp. 2007).  A>Relevant evidence= means evidence
having any tendency to make the existence of any fact that is of consequence to
the determination of the action more probable or less probable than it would be
without the evidence.@  Tex.
R. Evid. 401.  Matters relevant to sentencing include, but are not
limited to, the defendant=s character, opinions regarding his
character, and the circumstances of the offense for which he is being tried.  See
Tex. Code Crim. Proc. Ann. art.
37.07, ' 3(a)(1); Miller-El
v. State, 782 S.W.2d 892, 896B97 (Tex. Crim.
App. 1990) (en banc).  A victim=s emotional trauma may be a circumstance
of the offense relevant to sentencing.  See Stavinoha v. State, 808
S.W.2d 76, 78B79 (Tex. Crim. App. 1991) (en banc) (applying Miller-El
to hold evidence of victim=s emotional trauma admissible  at
punishment for aggravated sexual assault).

K.M.=s poem was relevant to show that the
consequences of appellant=s act included K.M.=s sadness at
having lost the sense of safety she once knew with her father, her mixed
feelings, her anger, her need to apologize for her promise not to tell, and
implicitly, for breaking that promise.  During  the guilt-innocence phase, K.M.
had testified she first learned that what her father was doing was wrong only
when he told her so and asked her not to tell anybody.  Like the defendant
priest in Stavinoha, appellant preyed on K.M.=s vulnerabilities
and could easily have anticipated the impact his betrayal of trust would have
on K.M.  See 808 W.S.2d at 79.  As did the Stavinoha court, we
conclude K.M.=s poem had a bearing on appellant=s personal
responsibility and his moral guilt and was therefore admissible.  See id.

Having concluded that K.M.=s poem was
relevant and that appellant did not preserve error with regard to whether its
potential for unfair prejudice outweighed its probative value, we overrule
appellant=s second issue.

V.  Conclusion

We overrule appellant=s two issues.  Accordingly, we
affirm the judgment of the trial court.

 

 

 

/s/      Eva M. Guzman

Justice

 

Judgment rendered
and Memorandum Opinion filed July 29, 2008.

Panel consists of
Justice Yates, Guzman, and Brown.

Do Not Publish C Tex. R. App. P.
47.2(b).









[1]  K.M. generally testified the touching started when
she was six years old, but at one point testified that when she was Afrom the ages of 3 to 9 it happened quite often.@





[2]  Appellant filed a sworn motion for community supervision before trial. 
In that motion, he stated he had Anever been convicted of a felony in this or any other
state,@ and had Anever been placed on community
supervision for a felony offense in this or any other state.@ 





[3]  Appellant went to Alaska sometime in October 2004
and was later arrested in Alaska in February 2005.  He was subsequently
extradited to Texas.  Appellant testified that his attorney had told him Ait would be best to fight extradition.@  The period of time from appellant=s arrest to his extradition may account for the
different characterizations of the amount of time appellant spent in Alaska.





[4]  See Walker v. State, 108 Tex. Crim. 190, 192B93, 299 S.W. 417, 418 (1927) (reasoning that because
the defendant had been absent from the county, he could have been convicted of
a felony during one of his absences; thus the defendant was not entitled to a
jury charge on community supervision).  But see Trevino v. State, 577
S.W.2d 242, 243 (Tex. Crim. App. 1979) (concluding that evidence from defendant=s wife that she had known him since he was a minor
and, to her knowledge, he had not been convicted of a felony was sufficient to
require a jury charge on community supervision).





[5]  As noted above, the jury charge in this case
included instructions on community supervision.





[6]  This rule provides, as is relevant here, that a lay Awitness=[s]
testimony in the form of opinions or inferences is limited to those opinions or
inferences which are . . . rationally based on the perception of the witness. .
. .@  Tex. R. Evid.
701.





[7]  See Reyna, 168 S.W.3d at 176B79; Broxton v. State, 909 S.W.2d 912, 918 (Tex.
Crim. App. 1995) (holding appellant failed to preserve complaint he was denied
right to present a defense and right to due process or course of law in
violation of federal and state constitutions when he did not raise those objections
below); Hernandez v. State, 171 S.W.3d 347, 357 (Tex. App.CHouston [14th Dist.] 2005, pet. ref=d.) (holding that, by not objecting to exclusion of
evidence at trial on deprivation-of due-process grounds, appellant did not
preserve complaint for appellate review); see also Ruiz v. State, No.
14-05-00757-CR, 2007 WL 2239289 (Tex. App.CHouston
[14th Dist.] Aug. 7, 2007, pet. ref=d)
(mem. op., not designated for publication).





[8]  Here, appellant does not renew his hearsay and
confrontation arguments.