# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

### NO. 03-08-00456-CR

**Charles Edward Langford, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF BELL COUNTY, 264TH JUDICIAL DISTRICT
### NO. 60583, HONORABLE MARTHA J. TRUDO, JUDGE PRESIDING

### M E M O R A N D U M   O P I N I O N

A jury convicted appellant Charles Edward Langford of aggravated sexual assault, *see* Tex. Penal Code Ann. § 22.021 (West Supp. 2009), sentenced him to eighty years in prison, and assessed a $10,000 fine. Langford argues that the trial court abused its discretion by excluding certain hearsay testimony. We affirm the judgment of conviction.

Langford was the bail bondsman for L.D., who had posted a bond after being arrested for theft of services. After learning that L.D. was unable to pay her debt in full, Langford told L.D. that his secretary was gone and offered to let L.D. do some clerical work for her to pay off the debt. On May 4, 2006, pursuant to this agreement, L.D. went to Langford's residence, where he was running his business. L.D. spent several hours filing, making phone calls, and receiving payments. When L.D. was ready to leave, Langford told her that she could not leave until she paid the rest of her bond. Langford showed L.D. a gun and ordered her to take her clothes off, slapped her,

and forced her to perform oral sex on him. After some time, L.D. vomited, prompting Langford to go to the bathroom. When Langford had left the room, L.D. grabbed her keys and ran naked to her car. Once she had left the premises, she got out of her car and flagged down another car for help. A couple stopped and took L.D. to a convenience store, where she called a friend. Together, L.D. and her friend went to the hospital, where L.D. gave a written statement to police.

Officer Howard Stinehour, a criminal investigator with the Bell County Sheriff's Office at the time of the incident, went to the convenience store, was briefed by other officers, and immediately left to investigate the scene of the incident. Stinehour arrived on the scene in an unmarked car, along with several deputies in patrol cars. After a deputy knocked on the door to Langford's residence and received no response, Stinehour knocked. Langford opened the door and then closed it again. He opened the door a second time and indicated that he did not want any deputies in his home, but he allowed Stinehour to enter the residence. Stinehour questioned Langford and conducted an investigation of certain areas of the residence, as permitted by Langford. Based on the investigation, Stinehour arrested Langford.

On January 24, 2007, Langford was indicted for aggravated sexual assault. During the jury trial, the district court denied Langford's motion to suppress evidence obtained during the initial investigation by Stinehour, but refused to allow hearsay testimony as to what was said by Langford to Stinehour during that investigation. The district court also refused to allow hearsay testimony as to what was said by Langford to Officer Becky Brown while Langford was being transported to the police station. The jury convicted Langford as charged, sentenced him to eighty years in prison, and assessed a $10,000 fine. In a single issue, Langford contends that

2

statements he made to Stinehour during questioning at Langford's residence and to Brown in the patrol car after being arrested should have been admitted under exceptions to the hearsay rule. *See* Tex. R. Evid. 803(2) (excited utterance), 803(24) (statement against interest).

We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Shuffield v. State*, 189 S.W.3d 782, 793 (Tex. Crim. App. 2006). Unless the trial court's decision was outside the zone of reasonable disagreement, we uphold the ruling. *Id.*; *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990).

Hearsay is a statement, other than one made by the declarant testifying at trial or hearing, offered in evidence to prove the truth of the matter asserted. Tex. R. Evid. 801(d). For hearsay to be admissible, it must fit into an exception provided by a statute or the rules of evidence. Tex. R. Evid. 802.

The rules of evidence provide an exception to the hearsay rule for an excited utterance, described as "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Tex. R. Evid. 803(2). The rationale is that statements made as a result of a startling event or condition are involuntary and do not allow the declarant an adequate opportunity to reflect back upon the events or to formulate self-serving declarations, thereby ensuring enough trustworthiness to fall outside the hearsay exception. *Zuliani v. State*, 97 S.W.3d 589, 595 (Tex. Crim. App. 2003); *Hunt v. State*, 904 S.W.2d 813, 816 (Tex. App.—Fort Worth 1995, pet. ref'd). To qualify as an excited utterance, (1) the statement must be the product of a startling occurrence, (2) the declarant must have been dominated by the emotion, excitement, fear, or pain of the occurrence, and (3) the statement must be related

3

to the circumstances of the startling occurrence. *Couchman v. State*, 3 S.W.3d 155, 159 (Tex. App.—Fort Worth 1999, pet. ref'd). The startling occurrence that triggers an excited utterance need not necessarily be the crime itself. *See McCarty v. State*, 257 S.W.3d 238, 242 (Tex. Crim. App. 2008).

Factors we may consider in evaluating whether a statement qualifies as an excited utterance include the length of time between the occurrence and the statement, the nature of the declarant, whether the statement is made in response to a question, and whether the statement is self-serving. *Apolinar v. State*, 155 S.W.3d 184, 187 (Tex. Crim. App. 2005). However, the critical factor in determining whether a statement is an excited utterance is whether the emotions, excitement, fear, or pain of the event still dominated the declarant at the time of the statement. *Zuliani*, 97 S.W.3d at 596.

The startling occurrence here, according to Langford, was having police show up at his house, accuse him of aggravated assault, and search his house for evidence of the crime. Officer Stinehour testified that he knocked on Langford's door and, when Langford answered, told Langford that "there was a disturbance and we wanted to know if everything was okay." Outside the presence of the jury, Stinehour testified that Langford responded by "[i]mmediately . . . talking about a female. He said that he had a card game with the female and she lost and was upset." During the offer of proof, Stinehour also testified:

Q. Mr. Stinehour, what explanation did Mr. Langford give you?

A. When I asked, he responded with the female lost a card game and that's the reason her clothes is [sic] here.

4

Q.    Going further did he tell you that he had played some type of card game called Three Card Monty with the—with [L.D.]?

A.    He mentioned a card game. The name of it I don't recall.

Q.    Did he mention that they had made a bet and that she had lost the bet?

A.    Yes, sir.

Q.    And that as part of losing the bet she had to remove her clothing?

A.    Yes, sir.

Q.    And because she lost the bet, he kept the clothes there when she elected to leave?

A.    Correct.

Q.    And did he tell you that he in fact instructed her to leave because she would not perform the rest of their bet which includes some type of sex?

A.    I don't recall him telling me that she had to leave.

Q.    Did he tell you that the bet included performing some type of sex act?

A.    I don't know. I don't think he even told me that. No.

To determine that Langford's statement qualifies as an excited utterance, we would first have to determine that Langford's version of events is true. Otherwise, the two hours between the incident and the arrival of police at the residence would have been sufficient to allow Langford to reflect on the events and to formulate a self-serving version of events, negating application of the excited utterance exception. *See Zuliani*, 97 S.W.3d at 595. Even if we were to accept Langford's version of events as true, Langford's response to the situation was self-serving, measured, and reasoned, indicating that Langford was not still dominated by the excitement or fear of having

5

police show up at his residence. *See Apolinar*, 155 S.W.3d at 187; *Zuliani*, 97 S.W.3d at 595. When police knocked on his door, Langford did not immediately answer. In response to more knocking by Stinehour, Langford opened the door and closed it again. When Langford opened the door a second time, he told Stinehour that he would allow Stinehour, but not the other deputies, into his house. Stinehour asked Langford whether there were guns in the house, and Langford directed Stinehour to a gun cabinet containing BB guns—both air rifles and pistols. Stinehour testified that Langford was "quick to point out that they're just BB guns." Langford also directed Stinehour to certain clothing, which he acknowledged belonged to L.D. Stinehour testified that Langford was "forthcoming with the information," directing Stinehour in his search, allowing access to certain areas and not to others. When Stinehour eventually decided to take Langford into custody, Langford asked Stinehour to be sure the residence was locked.

This evidence indicates a reasoned response to the situation, not a response guided by emotions evoked by fear or excitement. Although Stinehour testified that Langford was excited and that he appeared to be intoxicated, the evidence does not support Langford's argument that he was so dominated by emotions that his statements represented the events speaking through him rather than his speaking about the events. *See Zuliani*, 97 S.W.3d at 595. Evidence of an excited emotional state, standing alone, is not enough. *See Martinez v. State*, 178 S.W.3d 806, 814-15 (Tex. Crim. App. 2005).

Also at issue here are statements made by Langford to Officer Brown in the patrol car on the way to the police station. According to Brown's testimony during the offer of proof, Langford

6

repeatedly and continually insisted that he had done nothing wrong and that L.D. was lying. The following is the testimony at issue:

> Q. And then did he further say to you that he had done nothing wrong by keeping her clothes because he had won them playing a Three Card Monty . . . ?
>
> A. Yes, sir.
>
> Q. And you testified that he appeared or he was talkative and he was talking all the way, I guess you said back, all the way back to the jail. Was he—was he agitated?
>
> A. No, sir, just did a lot of talking saying he hadn't done anything.
>
> Q. Okay. Did he tell you that evening that Investigator Stinehour had seen the cards in the house that he was talking about? Do you recall that conversation?
>
> A. No, sir, I don't recall that.
>
> Q. Is it possible that he said that and you don't recall it?
>
> A. Yes, sir, it's possible.
>
> Q. He was doing a lot of talking?
>
> A. Yes, sir, very much so.
>
> Q. And he was sweating?
>
> A. Yes, sir.
>
> Q. And what—was he sweating at the time you put him into your car?
>
> A. No, sir.
>
> Q. And what he was saying to you about what I've just asked you was not in response to a question that you were asking him. In other words, you weren't

questioning him and he was answering your question, this was all freely spoken by him?

A.    He was just, like I said, nonstop. I wasn't asking him anything. I was just driving to the jail.

Q.    All right. And the fact is he had just been arrested for an aggravated sexual assault minutes before you took him into your patrol car?

A.    Yes, sir.

For the same reasons explained above, these statements do not qualify as excited utterances. The circumstances surrounding the investigation, which culminated in Langford's being arrested and taken to the police station, indicated that Langford possessed sufficient control over his emotions to prevent the statements from coming within the excited utterance exception to the hearsay rule. *See Zuliani*, 97 S.W.3d at 595. As noted earlier, evidence of an excited emotional state, standing alone, is not enough. *See Martinez*, 178 S.W.3d at 814-15.

The out-of-court statements made by Langford in the presence of Officers Stinehour and Brown that he had done nothing wrong—that L.D. had lost her clothing in a game of cards—did not possess the requisite level of reliability so as to remove it from the realm of contrivance and fabrication. *See Zuliani*, 97 S.W.3d at 595-96. The district court could have reasonably concluded that, because the applicability of the excited utterance exception here required it to first accept Langford's version of events as true, the statement was not sufficiently reliable to qualify as a hearsay exception. *See id.* at 595 (excited utterance is reliable because declarant does not have adequate opportunity to reflect back upon events or to formulate self-serving declarations). Even accepting Langford's version of events as true, the district court could have also reasonably

8

concluded that, based on evidence of a self-serving, reasoned response, Langford's statement was the product of reflection and contrivance rather than an excited utterance. *See id.* The trial court's decision to exclude the evidence as hearsay was within the zone of reasonable disagreement and was not an abuse of discretion, and therefore, we find no error in the trial court's decision to exclude the statement. *See id.*; *Manning v. State*, 114 S.W.3d 922, 926 (Tex. Crim. App. 2003).

Langford also argues that Stinehour's testimony about his conversation with Langford during the initial investigation should have been admitted as an admission against interest. *See* Tex. R. Evid. 803(24). Determining the admissibility of a hearsay statement under Rule 803(24) requires a two-part inquiry: the trial court must determine first whether the statement in question tends to expose the declarant to criminal liability and, second, whether there are corroborating circumstances that clearly indicate the statement's trustworthiness. Tex. R. Evid. 803(24); *Bingham*, 987 S.W.2d 54, 57 (Tex. Crim. App. 1999).

We cannot conclude that Langford's statements were statements against interest. Langford's statements were less an attempt to inculpate himself than an attempt to shift the blame to L.D. for agreeing to gamble her clothes and sexual favors for money. Although, as Langford points out, it is true that his version of events might have subjected him to prosecution, as well as to disgrace and ridicule, for prostitution and other deviant sexual acts, it would also have absolved him of the greater offense of aggravated assault. *See* Tex. Penal Code Ann. § 22.021 (aggravated sexual assault), § 43.02 (West Supp. 2009) (prostitution); *Hafdahl v. State*, 805 S.W.2d 396, 402 (Tex. Crim. App. 1990); *Hernandez v. State*, 171 S.W.3d 347, 356 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd). The inculpatory significance of the statements was minor in comparison to its

9

significance as means of absolving Langford of the crime for which he was accused. *See Hafdahl*, 805 S.W.2d at 402; *Hernandez*, 171 S.W.3d at 356. Accordingly, Langford's statements do not fall under the admission against interest exception to the hearsay rule. The trial court did not abuse its discretion by excluding them. *See Manning*, 114 S.W.3d at 926; *Zuliani*, 97 S.W.3d at 595.

Having overruled Langford's point of error, we affirm the judgment of the district court.

_____

G. Alan Waldrop, Justice

Before Chief Justice Jones, Justices Waldrop and Henson

Affirmed

Filed: January 27, 2010

Do Not Publish