

# IN THE
# TENTH COURT OF APPEALS

_____

## No. 10-08-00330-CR

**TOMMIE LINDLEY,**

**Appellant**

**v.**

**THE STATE OF TEXAS,**

**Appellee**

_____

**From the 361st District Court
Brazos County, Texas
Trial Court No. 08-00721-CRF-361**

_____

## MEMORANDUM  OPINION

_____

Tommie Lindley was convicted by a jury of the felony offense of driving while intoxicated.  TEX. PEN. CODE ANN. §§ 49.04 & 49.09(b)(2) (Vernon 2003).  Lindley pled not true to two felony enhancements based on prior convictions for theft and burglary of a habitation.  The jury found the enhancements true and based on the jury's verdict on punishment, the trial court sentenced Lindley to confinement for thirty-seven (37) years in the Texas Department of Criminal Justice – Institutional Division.  TEX. PEN. CODE ANN. §12.42(d) (Vernon 2003).  Lindley complains that the trial court erred in admitting evidence regarding a prior DWI conviction, that he received ineffective assistance of counsel, and that the evidence was factually insufficient to sustain his

conviction. Because we find that Lindley's objection on appeal did not match his objection at the trial court and error was waived regarding the admission of the prior convictions, that the record is insufficient to establish ineffective assistance of counsel, that the evidence was factually sufficient, and that while there was charge error, it did not result in egregious harm to Lindley, we affirm the conviction.

*Admission of Prior Convictions*

Lindley complains that the trial court erred by allowing testimony from two witnesses in the rebuttal phase of the guilt-innocence portion of his jury trial regarding the details surrounding his arrest for one of his prior DWI convictions. Lindley objected to the testimony, claiming the evidence was not relevant and was more prejudicial than probative. In his brief to this Court, however, Lindley does not allege that the evidence was not relevant, nor that its probative value was substantially outweighed by its prejudicial value, simply that the extraneous conduct was inadmissible, which we construe as an objection pursuant to Texas Rule of Evidence 404(b). TEX. R. EVID. 404(b).

Lindley's trial objection does not comport with his complaint on appeal. To preserve an issue for appeal, a timely and specific objection at trial is required. TEX. R. APP. P. 33.1(a); *see Turner v. State*, 805 S.W.2d 423, 431 (Tex. Crim. App. 1991); *Hernandez v. State*, 171 S.W.3d 347, 358 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd.) (explaining that objection must alert trial court to specific complaint). A trial objection must correspond with the issue presented on appeal. *See id*. "An objection stating one legal basis may not be used to support a different legal theory on appeal." *Edwards v. State*, 97 S.W.3d 279, 287 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd.).

We need not address Lindley's contention regarding whether the extraneous offense was admissible because Lindley did not preserve this issue for appeal. The record reflects Lindley only objected to the evidence on the grounds that it was irrelevant and more prejudicial than probative, not that the evidence was inadmissible under Rule 404(b). Accordingly, Lindley waived his Rule 404(b) complaint. *See id*. We overrule Lindley's issue number one.

*Ineffective Assistance of Counsel*

Lindley complains that his counsel was ineffective because he failed to stipulate to his prior convictions or to object to the admission of the documentary evidence regarding his prior DWI convictions, and that counsel was ineffective because he did not object to an instruction in the jury charge which Lindley contends constituted impermissible comments on the weight of the evidence by the trial court regarding Lindley's alleged refusal to submit to a breath test and the jury's ability to consider the refusal as evidence.

To prevail on an ineffective-assistance claim, Lindley must prove (1) counsel's representation fell below the objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's deficiency, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687, 694, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999). In considering an ineffective-assistance claim, we indulge a strong presumption that counsel's actions fell within the wide range of reasonable professional behavior and were motivated by sound trial strategy. *Strickland*, 466 U.S. at 689; *Thompson*, 9 S.W.3d at 813; *Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994). To overcome this

presumption, a claim of ineffective assistance must be firmly demonstrated in the record. *Thompson*, 9 S.W.3d at 814. In most cases, direct appeal is an inadequate vehicle for raising such a claim because the record is generally undeveloped and cannot adequately reflect the motives behind trial counsel's actions. *Rylander v. State*, 101 S.W.3d 107, 110-11 (Tex. Crim. App. 2003); *Thompson*, 9 S.W.3d at 813-14.

When the record is silent regarding trial counsel's strategy, we will not find deficient performance unless the challenged conduct was "so outrageous that no competent attorney would have engaged in it." *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005); *Robinson v. State*, 16 S.W.3d 808, 813 n. 7 (Tex. Crim. App. 2000). In rare cases, however, the record can be sufficient to prove that counsel's performance was deficient, despite the absence of affirmative evidence of counsel's reasoning or strategy. *Id*. This is not such a case.

Therefore, Lindley must first obtain the necessary record in the trial court to rebut the *Strickland* presumption that counsel's conduct was strategic for purposes of appeal. *Thompson*, 9 S.W.3d at 814; *McCullough v. State*, 116 S.W.3d 86, 92 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd.). This kind of record is best developed in a hearing on a motion for new trial, or by an application for a writ of habeas corpus. *See Jackson v. State*, 973 S.W.2d 954, 957 (Tex. Crim. App. 1998); *McCullough*, 116 S.W.3d at 92. Without evidence of the strategy and methods involved concerning counsel's actions at trial, we will presume sound trial strategy. *See Thompson*, 9 S.W.3d at 814. The record is silent as to any trial strategy by counsel. When, as here, the record is silent as to counsel's reason for failing to act in some manner, the appellant fails to rebut the presumption that counsel acted reasonably. *See Thompson*, 9 S.W.3d at 814.

Lindley contends that he received ineffective assistance of counsel because there was no objection to the charge regarding the trial court's instruction that "[y]ou are instructed that you may consider the Defendant's refusal to submit to a breath test, if he did refuse, as evidence in this case." Subsequent to Lindley's trial, the Court of Criminal Appeals held that an instruction regarding the failure to take a breath test constitutes an impermissible comment on the weight of the evidence. *See Bartlett v. State*, 270 S.W.3d 147, 152 (Tex. Crim. App. 2008). We will not find ineffective assistance of counsel solely based on an opinion that did not exist at the time of the trial. We overrule issues two and three.

## *Factual Insufficiency*

Lindley complains that the evidence was factually insufficient to sustain the jury's finding that he was intoxicated.

In a factual sufficiency review, we view the evidence in a neutral light and ask whether the evidence supporting the verdict is so weak or so against the great weight and preponderance of the evidence as to render the verdict manifestly unjust. *Steadman v. State*, 280 S.W.3d 242, 246 (Tex. Crim. App. 2009); *Grotti v. State*, 273 S.W.3d 273, 283 (Tex. Crim. App. 2008). Although a factual sufficiency review authorizes us, to a very limited degree, to act as a "thirteenth juror," we must nevertheless give the jury's verdict a great degree of deference. *Watson v. State*, 204 S.W.3d 404, 416-17 (Tex. Crim. App. 2006).

The fact-finder alone determines what weight to place on contradictory testimonial evidence because that determination depends on the fact-finder's evaluation of credibility and demeanor. *See* TEX. CODE CRIM. PROC. ANN. art. 36.13 and 38.04

(Vernon 2007) (stating that the jury is the exclusive judge of the facts and of the weight given to testimony); *Lancon v. State*, 253 S.W.3d 699, 705 (Tex. Crim. App. 2008). We afford almost complete deference to a jury's decision when that decision is based upon an evaluation of credibility as the jury is in the best position to judge the credibility of a witness because it is present to hear the testimony, as opposed to an appellate court which relies on the cold record. *Lancon*, 253 S.W.3d at 705. *See also Marshall v. State*, 210 S.W.3d 618, 625 (Tex. Crim. App. 2006).

A "high level of skepticism about the jury's verdict" is required before we may reverse due to factual insufficiency. *Watson*, 204 S.W.3d at 417. We may not find the evidence to be factually insufficient merely because there are "reasonably equal competing theories of causation." *Goodman v. State*, 66 S.W.3d 283, 287 (Tex. Crim. App. 2001). Further, a factual sufficiency reversal certainly may not occur when the evidence actually preponderates in favor of conviction. *Watson*, 204 S.W.3d at 417. Before reversing a conviction on the basis of factual insufficiency, we must detail all the relevant evidence and must explain in exactly what manner the evidence is factually insufficient. *Watson*, 204 S.W.3d at 414.

Lindley contends that in our factual sufficiency analysis we should not consider his prior DWI convictions, the facts surrounding one of the prior convictions, or the testimony regarding Lindley's refusal to take the breath test, but should consider only the other evidence offered, which renders the evidence factually insufficient. However, when conducting a factual sufficiency review, we consider all of the evidence, both direct and circumstantial, whether properly or improperly admitted. *See Berry v. State*, 233 S.W.3d 847, 854 (Tex. Crim. App. 2007); *Marshall v. State*, 210 S.W.3d 618, 625 (Tex.

Crim. App. 2006), *cert. denied*, 128 S. Ct. 87, 169 L. Ed. 2d 66 (2007); *see also King v. State*, 29 S.W.3d 556, 565 (Tex. Crim. App. 2000); *Kutzner v. State*, 994 S.W.2d 180, 184 (Tex. Crim. App. 1999).

*The Facts*

A witness observed Lindley driving for a significant distance with his right turn signal on. Lindley then began to swerve on and off the road, varied speeds significantly, and was driving so erratically that the witness signaled other drivers to warn them away and called the police. Lindley almost caused more than one accident and almost ran several cars off the road. When the officer pulled Lindley over, Lindley stopped in the middle of the highway.

Lindley exited the highway. Upon approach by the officer, Lindley appeared disoriented and confused. The officer smelled the odor of alcohol inside the vehicle and on Lindley's breath. Lindley was confused about his whereabouts and when asked to show his license and insurance, he attempted to read his insurance card upside down. Lindley stated he suffered from sleep apnea. Lindley had red bloodshot eyes. According to the officer, Lindley's balance was "a little bit" unsteady walking around the car.

During the roadside encounter with the officer, Lindley gave different stories regarding where he was going and admitted that he had two beers earlier in the day. The officer conducted the Horizontal Gaze Nystagmus (HGN) test and observed four of six clues indicating intoxication. Lindley was unable to perform the walk and turn test, but the officer did not count that against Lindley due to his size and alleged physical condition.

Lindley was unable to perform the one leg stand because of previous back surgery. The officer then arrested Lindley and took him to the police station to take a breath sample from him. Lindley agreed, but then did not blow into the intoxilyzer machine correctly. Lindley was argumentative and belligerent at the station.

The officer who administered the breath test believed that Lindley held his breath and merely pretended to blow into the machine. The officers considered Lindley's failure to provide an adequate specimen after multiple attempts as a refusal.

The State called an expert witness to explain the HGN test and to give an opinion regarding the effects of alcohol on a person and observations regarding the videotape of Lindley. When four of six clues are shown on the HGN test, there is an 88 percent chance of accuracy that the individual is intoxicated. The witness pointed to several signs of intoxication in the video, which included Lindley's driving prior to the stop. Lindley straddled both lanes of the road. He stopped in the center of both lanes of the highway. Additionally, Lindley stopped two other times on the highway after driving forward a short distance. Lindley was slow to respond to the officer's command while traveling a long distance before coming to a complete stop. Other signs of intoxication included the fact that Lindley did not follow commands when stopped, had slurred speech, performed poorly on the walk and turn test, and leaned on his vehicle for balance.

The expert also opined that the HGN test was administered properly. He also noted that Lindley was uncooperative at the station in providing a breath sample. While he was not familiar with Lindley's physical limitations, he still believed that

Lindley was intoxicated as shown on the video. Further, he had found no research that narcolepsy would simulate intoxication in the HGN test.

Lindley's brother and sister testified that they had each seen Lindley fall asleep suddenly, including while driving. His brother was unaware that Lindley had narcolepsy until Lindley told him about it and his sister did not know about it at all. When Lindley would wake up, he did not seem confused or disoriented. A local defense attorney observed Lindley fall over in court and stated that he looked like he was "falling asleep walking" at a pretrial hearing, but might have just tripped.

Lindley went to a doctor five days after his arrest regarding a sleep problem. He was diagnosed with hypertension, sleep apnea, a disc injury in his spine, and possible narcolepsy. Narcolepsy is a daytime sleep disorder which causes individuals to fall asleep without notice. However, Lindley's diagnosis regarding narcolepsy was based solely on Lindley's self-report and no testing was conducted on Lindley to confirm whether or not he had narcolepsy. It is rare for narcolepsy to begin at Lindley's age, after age forty. He contended that the clues for the HGN test can also be caused by narcolepsy. He did not know the DSM criterion for diagnosing narcolepsy, which is an incident once daily for three months.

During the State's rebuttal case, the bailiff who was in the courtroom when Lindley fell described that incident. He stated that Lindley lost his balance and fell backwards while stepping down two steps in the jury box, but that he did not see Lindley fall asleep or pass out.

The officer who arrested Lindley for DWI in 2004 testified to the events surrounding that arrest. In that case, a call was received from a driver regarding highly

erratic driving. Lindley was the driver. At the scene, the officer smelled the odor of alcohol on Lindley and Lindley had slurred speech. Lindley was able to and did perform the field sobriety testing at the scene, including the HGN, walk and turn test, and the one leg stand. He also consented to give a breath specimen, but did not blow into the tube properly. The officer believed that Lindley was holding his breath.

The individual who observed Lindley driving erratically prior to his arrest for the 2004 DWI testified that Lindley was swerving all over the highway and nearly caused several accidents, sped up and slowed down, and ran off the road at one point. The individual and other drivers attempted to warn other vehicles and he called the police because Lindley's driving was so dangerous.

Documentary evidence was introduced at the beginning of the trial regarding two prior convictions where Lindley had pled guilty and been convicted of driving while intoxicated. A fingerprint expert compared the fingerprints on the judgments with fingerprints she had taken of Lindley the morning of her testimony and found them to be from the same individual. There was no objection either to the introduction of the exhibits or to the substance of the expert's testimony.

Viewing all of the evidence neutrally, we cannot say that the evidence supporting the verdict is so weak or so against the great weight and preponderance of the evidence as to render the verdict manifestly unjust. *See Steadman v. State*, 280 S.W.3d 242, 246 (Tex. Crim. App. 2009).

*Jury Charge Error*

Although it was not raised in a separate issue but as a basis for an allegation of ineffective assistance of counsel, we will directly address the charge error based on the

*Bartlett* decision by the Court of Criminal Appeals. In *Bartlett*, the Court of Criminal Appeals stated that "an instruction to the jury with respect to the admissibility of a defendant's refusal to take a breath test constitutes an improper comment on the weight of the evidence." *Bartlett*, 270 S.W.3d at 152. The charge to the jury contained the following instruction: "You are instructed that you may consider the Defendant's refusal to submit to a breath test, if he did refuse, as evidence in this case." This instruction constitutes an impermissible comment on the weight of the evidence by the trial court, and was therefore, erroneous. Lindley did not object to this instruction to the trial court.

In the absence of an objection, the record must show that Lindley has suffered not only actual harm, but egregious harm resulting from the incorrect charge. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (establishing the proper standard of review for jury charge error in the absence of an objection to jury charge error). Egregious harm arises if the error is so severe that it deprived Lindley of a fair and impartial trial, affected the very basis of the case, vitally affected a defensive theory, or otherwise deprived him of a valuable right. *Hutch v. State*, 922 S.W.2d 166, 171 (Tex. Crim. App. 1996); *Warner v. State*, 245 S.W.3d 458, 461-62 (Tex. Crim. App. 2008). In making this determination, we consider (1) the entire jury charge, (2) the state of the evidence, (3) the arguments of counsel, and (4) any other relevant information in the record as a whole. *Richardson v. State*, 879 S.W.2d 874, 882 (Tex. Crim. App. 1993); *Almanza*, 686 S.W.2d at 171. Because Lindley's trial counsel failed to object, reversal is only required if Lindley suffered egregious harm from the trial court's error. *Almanza*, 686 S.W.2d at 171.

In his argument regarding harm pursuant to the ineffective assistance of counsel issue, Lindley asserts that he was harmed by the State arguing that he intentionally failed to submit to the breath test and that he was again playing games with the intoxilyzer during its closing argument. However, the evidence regarding his efforts at taking the breath test was properly admitted before the jury. *See* TEX. TRANSP. CODE ANN. § 724.061 (Vernon 1999) ("a person's refusal . . . to submit to the taking of a specimen of breath or blood . . . may be introduced into evidence at the person's trial.")

Proper jury argument includes summation of the evidence presented at trial, reasonable deduction drawn from that evidence, answer to the opposing counsel's argument, and a plea for law enforcement. *Jackson v. State*, 17 S.W.3d 664, 673 (Tex. Crim. App. 2000). Thus, the comments by the State regarding their perception of Lindley's failure to submit a valid breath specimen were not improper jury argument. Certainly, Lindley was able to argue the opposite in his closing argument, although he chose not to do so.

The State did make reference to the instruction in their closing argument one time when they stated that "the refusal, the judge told you in his instructions that you are allowed to consider that as evidence." The charge as written, however, did give the jury the option of determining whether they believed there was a refusal or not. However, when we consider the record as a whole, we do not find that this comment deprived Lindley of a fair trial or was calculated to injure his rights.

The charge as given to the jury was otherwise unremarkable. As discussed in detail above, we have determined that the evidence was factually sufficient to establish Lindley's guilt. Viewed in its entirety, the record lacks any evidence that the error was

either calculated to injure Lindley's rights or deprived him of a fair trial. *See Hess*, 224 S.W.3d at 515; *Almanza*, 686 S.W.2d at 171. Thus, we do not find that Lindley suffered egregious harm.

*Conclusion*

We find that any error regarding the admission of the testimony surrounding Lindley's prior arrests was not properly preserved. We find that the record is insufficient to establish that Lindley received ineffective assistance of counsel. We find that the evidence is factually sufficient to sustain the conviction. We find that the trial court did err in submitting an instruction to the jury regarding the breath test; however, the error was not egregiously harmful. We affirm the judgment of the trial court.


TOM GRAY
Chief Justice

Before Chief Justice Gray,
    Justice Reyna, and
    Justice Davis
Affirmed
Opinion delivered and filed February 3, 2010
Do not publish
[CRPM]