TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-11-00224-CR






Mario Albert Valadez, Appellant


v.


The State of Texas, Appellee






FROM THE DISTRICT COURT OF COMAL COUNTY, 207TH JUDICIAL DISTRICT

NO. CR2010-417, HONORABLE JACK H. ROBISON, JUDGE PRESIDING




M E M O R A N D U M O P I N I O N




 A jury convicted appellant Mario Albert Valadez of the offense of burglary of
a habitation. See Tex. Penal Code Ann. § 30.02 (West 2011). Punishment, enhanced by eight prior
felony convictions, was assessed at life imprisonment. In two points of error, Valadez asserts that
the district court abused its discretion in excluding hearsay testimony and that the district court
erred in denying his request for an instruction on the lesser-included offense of theft. We will affirm
the judgment.


BACKGROUND

 The jury heard evidence that on June 11, 2010, the home of Tony and Leticia Valadez
was burglarized. (1) Their adult son, Tony Jr., was alone in the house when the burglary allegedly
occurred, and he was the State's primary witness during trial. Tony Jr. testified that he was asleep
in the house that morning when he heard the doorbell ring. Tony Jr. remained in bed. However,
"about three to five minutes" later, when he got up to use the bathroom, he heard someone in his
parents' bedroom, walked slowly to their room, and looked in the doorway. Inside the bedroom,
Tony Jr. saw Valadez, his uncle and Tony's brother, looking through the closet. Tony Jr. testified
that Valadez "had a ring and a watch and other stuff in his hand." According to Tony Jr., Valadez
saw him, attempted to explain to Tony Jr. that he was a drug addict and needed "help," and asked
him if he was going to tell his parents what he had seen. Tony Jr. told Valadez that if he "put
everything back," he would not tell his parents. Valadez then proceeded to "put some stuff back,"
continued asking Tony Jr. not to say "anything . . . to anyone," and eventually left the house.

 Tony Jr. further recounted that while he was out eating dinner with his friends that
night, he received a phone call from his father, who inquired if any of his friends had been inside the
house. Tony Jr. denied that anyone had been inside. When Tony Jr. returned to the house later that
night, police officers were there. When Tony Jr. asked his father what had happened, his father told
him that his wedding band and his watch were missing. After the police left, Tony Jr. told his father
that Valadez had been inside the house. His father then called the police, officers returned to the
house, and they took a statement from Tony Jr. Tony Jr. also testified that he did not let his uncle
into the house that day, that he did not give his uncle consent to come into the house, and that he did
not give him permission to take the watch or the wedding band.

 On cross-examination, Tony Jr. acknowledged that he did not know how Valadez
had entered the house and that he had observed no signs of forced entry. The record reflects that the
house has three exterior doors--the front door, a side door into the kitchen, and a back door entering
into the master bedroom. Tony Jr. acknowledged that his parents usually lock the three exterior
doors into the house when they leave, but he did not know whether the doors were locked that day.
Additionally, Tony Jr. admitted that when he had been interviewed by police, he had told them that
the incident had occurred at approximately 2:00 p.m., and that the trial was the first time he had
claimed the incident had occurred in the morning.

 Tony Sr. testified that on the day of the alleged burglary, he had left his house at
approximately 7:45 a.m. and returned at approximately 3:00 p.m. or 4:00 p.m. that afternoon. When
he returned, he noticed that the back door to the master bedroom, which he testified had not been
used in seven to eight years, (2) was open and that a small John Deere tractor inside the bedroom that
had always been "backed up to that door" had been "pushed forward . . . three feet from the door." (3)
Tony shut the door, "went on with [his] business," and left the house. When Tony returned to the
house later that afternoon, he noticed that his wedding band and his watch, both of which he usually
kept on his nightstand, were missing. Tony also observed that various pieces of jewelry belonging
to his wife were on his nightstand instead of hers, which he found to be "out of the ordinary." Tony
asked his wife why her jewelry was on his nightstand, and she did not know. At that point, Tony
called the police. When the police arrived, Tony also noticed a "fresh footprint" near the back door
and pointed it out to the officers. The officers took photographs of the bedroom, the door, and the
footprint, and copies of the photographs were admitted into evidence. Tony testified that he did not
allow his brother inside his house that day, that he did not give him consent to enter the house, and
that he did not give him permission to take his belongings.

 Tony's wife, Leticia, testified that after her husband had told her that his watch and
wedding band were missing, she began to look around their bedroom and noticed that some items
were out of place and that her dresser drawers and jewelry boxes had been opened and "seemed
like they had been gone through." Leticia then recounted how she and her husband had reported the
incident to the police and had obtained information from their son about who had been inside the
house. Leticia further testified that the following morning, she had gone to a pawn shop to look for
the missing items. (4) There, Leticia learned that the items had in fact been pawned at the store's other
location. (5) Leticia and Tony went to that location and recovered their property. Leticia also testified
that she did not allow Valadez to come into her house on the day in question, that she did not give
him consent to come into her home that day, and that she did not give him permission to take her
husband's watch or wedding band.

 One of the witnesses for the defense was Detective Edward Wahrmund of the
New Braunfels Police Department, who had investigated the case. Defense counsel first attempted
to elicit testimony from Wahrmund regarding statements allegedly made by Valadez during his
interview with police. In these statements, which we explain more fully below, Valadez admits to
participating in a drug transaction with Tony Jr. and claims that the stolen items were given to
him by Tony Jr. in exchange for marihuana. The State objected to this testimony as inadmissible
hearsay, while the defense argued that the testimony was admissible as a statement against interest.
Following a hearing outside the presence of the jury, the district court sustained the State's objection.

 When the jury returned, defense counsel proceeded to question Wahrmund on other
matters related to the investigation. Wahrmund testified that footprints were found leading into but
not out of the house through the master bedroom. From this evidence, Wahrmund surmised that the
burglar got out of the house "probably through another entrance or exit." Wahrmund also testified
that during the investigation, he "did not note any signs of forced entry" into the house.

 Officer Michael Smith of the New Braunfels Police Department also investigated the
burglary and testified for the defense. Smith testified that he had concluded during the investigation
that the person who had committed the burglary must have been someone who was familiar with the
house. (6) He came to this conclusion because "whoever came in was very meticulous as to where they
looked. They pulled out items, set them aside, and did not take all of the valuables they saw; only
specific items." Smith also testified that there were no signs of forced entry into the house.

 During the charge conference, the defense requested a jury instruction on the lesser-included offense of theft, which the district court denied. Following its deliberations, the jury
found Valadez guilty as charged and subsequently assessed punishment at life imprisonment. The
district court sentenced Valadez in accordance with the jury's verdict. This appeal followed.

ANALYSIS

Hearsay

 In his first point of error, Valadez asserts that the district court abused its discretion
in excluding his statements to police regarding the alleged drug transaction between himself and
Tony Jr. According to Valadez, the statements were against his interest and were thus admissible
under an exception to the hearsay rule. See Tex. R. Evid. 803(24). The State responds that the
exception does not apply in this case because the statements Valadez allegedly made were not
against his interest but were instead self-serving.

 We review a trial court's decision to admit or exclude evidence for an abuse
of discretion. Ramos v. State, 245 S.W.3d 410, 417-18 (Tex. Crim. App. 2008). A trial court
abuses its discretion only when its decision "is so clearly wrong as to lie outside that zone
within which reasonable persons might disagree." McDonald v. State, 179 S.W.3d 571, 576
(Tex. Crim. App. 2005) (citing Montgomery v. State, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991)
(op. on reh'g)).

 Hearsay is a statement, other than one made by the declarant testifying at the trial or
hearing, offered in evidence to prove the truth of the matter asserted. Tex. R. Evid. 801(d). Hearsay
is inadmissible unless it fits into an exception provided by a statute or the rules of evidence. Tex. R.
Evid. 802. One such exception provided by the rules of evidence is a "statement against interest,"
defined as,


A statement which was at the time of its making so far contrary to the declarant's
pecuniary or proprietary interest, or so far tended to subject the declarant to civil
or criminal liability, or to render invalid a claim by the declarant against another, or
to make the declarant an object of hatred, ridicule, or disgrace, that a reasonable
person in declarant's position would not have made the statement unless believing
it to be true. 


Tex. R. Evid. 803(24). Moreover, "[i]n criminal cases, a statement tending to expose the declarant
to criminal liability is not admissible unless corroborating circumstances clearly indicate the
trustworthiness of the statement." Id. Additionally, it has long been the rule in Texas that if the
statement is made by the defendant, but the statement is self-serving, i.e., it tends to absolve the
defendant of responsibility for the crime charged, the statement is inadmissible. See Wood v. State,
18 S.W.3d 642, 651 (Tex. Crim. App. 2000); Hafdahl v. State, 805 S.W.2d 396, 402 (Tex. Crim.
App. 1990); Womble v. State, 618 S.W.2d 59, 62 (Tex. Crim. App. 1981); Hernandez v. State,
171 S.W.3d 347, 356 (Tex. App.--Houston [14th Dist.] 2005, pet. ref'd); Davis v. State, 970 S.W.2d
758, 760-61 (Tex. App.--Austin 1998, pet. ref'd); see also Langford v. State, No. 03-08-00456-CR,

2010 Tex. App. LEXIS 567, at *12-13 (Tex. App.--Austin Jan. 27, 2010, no pet.) (mem. op.,
not designated for publication) (explaining that statements by defendant are to be excluded when
"[t]he inculpatory significance of the statements [is] minor in comparison to its significance as
means of absolving [the defendant] of the crime for which he was accused").

 During his offer of proof, Valadez elicited the following testimony from Wahrmund:


Q. Did you investigate the case of the burglary of a habitation of Mario Valadez?


A. I did.


Q. Okay. And during that time did you question Mario about the case?


A. I did have an occasion to meet with him and speak with him.


Q. Okay. Did you ask him his side of the story?


A. I did.


Q. Did he give you an explanation?


A. He explained that he had met with his nephew, who I called Tony Junior in
my report, and a transaction was made between them.


. . . .


Q. What did that mean to you?


A. After explaining that he had pawned the jewelry and explaining--or I asked
what happened or how that came about. He explained that he had made a
transaction with Tony Junior. I followed up with questions to clarify what
kind of transaction he was referring to.


Q. How did you clarify?


A. I asked him in just lay terms, street terms, I asked him if he was talking about
a white transaction or a green transaction.


Q. What does that mean?


A. I was referring to white being methamphetamine or heroin, or green being
marihuana.


Q. And how did he respond to you?


A. He admitted--or he told me that it was a green transaction.


Q. So he admitted to a green transaction, which would be selling marihuana?


A. Correct.


Q. Okay. And he admitted that he sold that marihuana to Tony Junior. Is that
correct?


A. That's correct.


Q. And he said that that was at Tony Junior's request?


A. Yes.


Q. And did he say that Tony then gave him the items to pawn for payment?


A. It was my understanding that he received those items as payment for the
marihuana.



 The district court would not have abused its discretion in finding that although
the above statements tended to subject Valadez to prosecution for a marihuana transaction, the
statements also tended to absolve him of the burglary offense for which he was charged. Valadez
had told Wahrmund that the stolen items were given to him by Tony Jr. as payment for marihuana.
In other words, Valadez was claiming that rather than being the perpetrator of a burglary of his
brother's home, he was merely at the house selling marihuana to his consenting, adult nephew. 
While selling marihuana is certainly a criminal offense, it would not be outside the zone of
reasonable disagreement for the district court to conclude that the inculpatory significance of
admitting to a drug offense was minor in comparison to its significance as a means of absolving
Valadez of the burglary offense for which he was charged. Accordingly, we cannot conclude that
the district court abused its discretion in finding Valadez's statements to be more self-serving than
inculpatory and thus inadmissible. See Wood, 18 S.W.3d at 651; Hernandez, 171 S.W.3d at 356;
Davis, 970 S.W.2d at 761. 

 We overrule Valadez's first point of error.


Lesser-included offense

 In his second point of error, Valadez asserts that the district court erred in denying
his requested instruction for the lesser-included offense of theft. The State responds that Valadez
was not entitled to such an instruction because there was no evidence presented that Valadez, if
guilty, was guilty only of the offense of theft.

 An offense is a lesser included offense if it is established by proof of the same or less
than all the facts required to establish the commission of the offense charged. Tex. Code Crim. Proc.
Ann. art. 37.09(1) (West 2006). The determination of whether a lesser-included-offense instruction
requested by a defendant must be given requires a two-step analysis. Rice v. State, 333 S.W.3d 140,
144 (Tex. Crim. App. 2011) (citing Hall v. State, 225 S.W.3d 524, 535-36 (Tex. Crim. App. 2007)).
The first step of the analysis asks whether the lesser-included offense is included within the
proof necessary to establish the offense charged. Id. The second step is to determine if there is some
evidence in the record which would permit a jury to rationally find that, if the defendant is guilty,
he is guilty only of the lesser-included offense. Id. at 145.

 The State does not dispute that theft is included within the proof necessary to
establish the charged offense. Assuming without deciding that the first prong of the test was
satisfied in this case, Valadez would be entitled to an instruction on that offense only "if there is
some evidence in the record which would permit a jury to rationally find that, if the defendant
is guilty, he is guilty only of the lesser-included offense." Id. at 145 (citing Guzman v. State,
188 S.W.3d 185, 188-89 (Tex. Crim. App. 2006); Hall, 225 S.W.3d at 536). "In this step of the
analysis, anything more than a scintilla of evidence may be sufficient to entitle a defendant to a lesser
charge." Hall, 225 S.W.3d at 536. "In other words, the evidence must establish the lesser-included
offense as 'a valid, rational alternative to the charged offense.'" Id. (quoting Forest v. State,
989 S.W.2d 365, 367 (Tex. Crim. App. 1999)).

 In deciding whether the issue of a lesser-included offense is raised, we look to all
the evidence presented at trial. Havard v. State, 800 S.W.2d 195, 216 (Tex. Crim. App. 1989). The
credibility of the evidence and whether it is controverted or conflicts with other evidence may not
be considered. Id. It is not enough that the jury may disbelieve crucial evidence pertaining to the
greater offense. Skinner v. State, 956 S.W.2d 532, 543 (Tex. Crim. App. 1997). Rather, there
must be some evidence directly germane to a lesser-included offense for the fact-finder to consider
before the instruction is warranted. Id. A lesser-included offense may be raised if evidence either
affirmatively refutes or negates an element establishing the greater offense, or the evidence on the
issue is subject to two different interpretations, and one of the interpretations negates or rebuts an
element of the greater. Schweinle v. State, 915 S.W.2d 17, 19 (Tex. Crim. App. 1996).

 In this case, the question is whether there was some evidence presented at trial
that would have permitted a rational jury to acquit Valadez of burglary of a habitation and find him
guilty only of theft. As charged, a person commits the offense of burglary of a habitation if he enters
a habitation without the effective consent of the owner with the intent to commit a theft or if he
commits or attempts to commit a theft. See Tex. Penal Code Ann. § 30.02(a)(1), (3). Therefore, in
order to acquit Valadez of burglary but find him guilty only of theft, there must be evidence in the
record that Valadez either did not enter the home at all or, if he did, that he did so with the owners'
effective consent.

 No such evidence was presented at trial. Tony Jr. testified that he found Valadez
inside the home, and this testimony was undisputed. As for the issue of consent, the owners of the
home, Tony and Leticia, both testified that they did not allow Valadez into their home that day or
give him consent to enter the house. Their son, Tony Jr., similarly testified. (7) The evidence showing
Valadez's lack of consent to enter the house was also undisputed. 

 Valadez's primary argument for why he was entitled to an instruction of the lesser-included offense of theft is that there were "credibility" issues with the State's witnesses, particularly
Tony Jr. claiming for the first time during trial that the burglary occurred in the morning rather
than in the afternoon. Again, however, "it is not enough that the jury may disbelieve crucial
evidence pertaining to the greater offense; there must be some evidence directly germane to a lesser
included offense for the factfinder to consider before an instruction on a lesser included offense is
warranted." Bignall v. State, 887 S.W.2d 21, 24 (Tex. Crim. App. 1994). No such evidence was
presented in this case. See also Robinson v. State, No. 07-08-00157-CR, 2010 Tex. App. LEXIS
2446, at *8-9 (Tex. App.--Amarillo Apr. 6, 2010, pet. ref'd) (mem. op., not designated for
publication) (explaining that more is required to entitle defendant to instruction on lesser-included
offense of theft than "simply . . . pointing out reasons the jury could have disbelieved the State's
evidence [that the defendant] committed the burglary"). 

 Valadez also argues that evidence showing that there were no signs of forced entry
into the home supports a lesser-included-offense instruction. However, the lack of forced entry
does not negate any element of burglary as that offense is currently defined. See Clark v. State,
667 S.W.2d 906, 908 (Tex. App.--Dallas 1984, pet. ref'd); see also Tex. Penal Code Ann.
§ 30.02(b) (defining "enter" for purposes of burglary statute; definition does not include use of
force); Griffin v. State, 815 S.W.2d 576, 578 (Tex. Crim. App. 1991) ("Section 30.02 abolished the
distinction between daytime and nighttime burglary and abolished any requirement for a 'breaking,'
requiring only an entry with the requisite intent."). Moreover, there was evidence of forced entry
in this case. The evidence showed that Valadez may have entered the house by pushing open the
back door into the master bedroom and displacing the small tractor that had been placed against the
inside of the door. But even if no force was required to enter the home and the doors had been
unlocked prior to Valadez's entry, there was no evidence presented that Valadez had the owners'
effective consent to enter the home. See Clark, 667 S.W.2d at 908 ("[A]n entry through an open
door can constitute a burglary . . . if the building is not open to the public."); see also Rogers v. State,
No. B14-91-00041-CR, 1992 Tex. App. LEXIS 2215, at *5 (Tex. App.--Houston [14th Dist.]
Aug. 13, 1992, no pet.) (not designated for publication) ("That the complainant left his door
unlocked is not material, since entry through an open door constitutes burglary, if done without the
effective consent of the owner.").

 Finally, Valadez asserts that a lesser-included-offense instruction was warranted
because he was "looking at a life sentence" if convicted of the offense of burglary of a habitation. (8)
See Grey v. State, 298 S.W.3d 644, 647 (Tex. Crim. App. 2009) (case involving request by State for
lesser-included offense instruction; discussing Supreme Court precedent concluding that "a failure
in a capital case to submit a lesser-included offense when raised by the evidence violates the
constitution because there is an unwarranted risk that 'a jury might convict a defendant of a capital
offense because it found that the defendant was guilty of a serious [but lesser] crime.'") (quoting
Hopper v. Evans, 456 U.S. 605, 610 (1982)). However, in this case, for the reasons explained above,
the lesser-included offense of theft was not raised by the evidence as a valid, rational alternative to
the burglary offense charged. Accordingly, the constitutional concerns identified in Grey are not
implicated here, and we cannot conclude that the district court erred in refusing to instruct the jury
on the lesser-included offense of theft.

 We overrule Valadez's second point of error.


CONCLUSION

 We affirm the judgment of the district court.



 ___________________________________________

 Bob Pemberton, Justice

Before Chief Justice Jones, Justices Pemberton and Henson

Affirmed

Filed: October 26, 2011

Do Not Publish
1. Several witnesses in the case are related to Valadez and share his surname. To avoid
confusion, we will refer to these witnesses using their first names.
2. However, on cross-examination, Tony admitted that he had reported to the police that the
door "opens from time to time when the house settles."
3. The record is unclear as to the exact size of the tractor. However, in response to a question
as to how big the tractor was, Tony Jr. suggested that it was a toy, testifying that it was "not too big"
and was "for a child" or "for a kid."
4. On cross-examination, Leticia testified that she had called Valadez the previous night and
that he had told her where he had taken the items.
5. Carolina Cheatham, an employee of the pawn shop at the time, testified that she had bought
the items in question and identified Valadez as the man who had sold them to her.
6. One of the defense's theories during trial was that Valadez had not visited the house often
and thus was unfamiliar with where valuable items were kept in the house.
7. We also note that even if the district court had admitted Valadez's statements tending
to show that Tony Jr. had allowed Valadez to enter the home for the purpose of engaging in a
drug transaction, the statements would not be evidence that Tony Jr. was legally authorized to give
consent to enter the home on behalf of his parents. See Gonzales v. State, 931 S.W.2d 574, 575-76
(Tex. Crim. App. 1996).
8. We note that Valadez was "looking at a life sentence" because of his status as a habitual
offender, not because of the burglary offense itself, which is classified as a felony of the
second degree. See Tex. Penal Code Ann. § 30.02(c)(2) (West 2011).